KITCHENS, Justice,
dissenting:
¶ 32. Because I believe this Court’s deferential standard of review requires us to affirm the the circuit court’s findings on liability, I respectfully dissent. I would affirm the circuit court’s ruling that the City was equitably estopped from raising the statute of limitations, defense due to Vail’s intentionally misleading actions. I also would affirm the circuit court’s finding that the City was not immune from liability under the Mississippi Tort Claims Act for the McMillins’ claims for repairs to their home (the Residence) and for the legal fees-incurred in their lawsuit against Lawrence Deas. However, because the circuit court awarded the McMillins legal fees beyond what they incurred in their lawsuit against-Deas, I would reverse that damages award and remand for the circuit court to award damages in an amount limited to the legal fees the McMillins incurred in their lawsuit against Deas.
A Facts
¶ 33. Since the facts of this case are complicated, I provide the following time-line:
July 5, 2005 A building permit for the Residence was issued to Joey Guyton with Precision Properties. Guyton was a licensed contractor, but his business partner, Jamie Ewing, was not licensed. Ewing and Guyton worked on construction of the Residence.
*958 July"5, 2005 A “blue card” was issued for the Residence listing' Guyton as the licensed contractor. Trial testimony established that a blue card is a document that contains ■ information about a building project and is kept at the job site for reference by building inspectors.
Apr. 4, 2006 Guyton gave a handwritten note to the City’s permit office manager, Marilyn Vail, stating, “I am withdrawing all permits attached to my' contractor’s license.,.. .All permits are attached to this letter and effective April 4,-2006 at 12:00 p.m.” Vail requested that Guyton provide the < City á formal .notice of his withdrawal of the permits.. ■
Apr. 5,-2006 Lawrence Deas[3] and Jamie Ewing sent a letter- to Vail stating, “Lawrence Deas has been -hired by Harvester’s Square Developers, LLC, to temporarily oversee construction-of all residencies under construction until such time as another licensed contractor is found to take over said jobs.” Both Deas and Ewing signed this letter. This letter never was ■ placed in the permit file for the Residence.
Apr. 11, 2006 Guyton provided Vail for- . mal notice of the withdrawal of his contractor’s license from the building permits. His letter stated “I am withdrawing the use of my general contractor’s permit for the building permits listed below. I release the listed permits for the Harvester’s Square developer to use another licensed general contractor to: finish the projects,” '' The letter listed eleven addresses, including nine addresses in the Harvester’s Square development, and two other addresses, including that of the Residence.
Apr. 11, 2006 Vail issued a replacement blue card listing Deas as the licensed contractor associated with the building permit for the Residence, Vail testified that she mistakenly had interpreted the letters of April 4, 2006, ■ April 5, 2006, and April 11, 2006, to mean that, when Guyton released the ' building permit for the Residence, Deas was going to take over the permit. In reality, the April 5, 2006, letter from Deas and Ewing indicated that Deas temporarily was taking over the Harvester’s Square permits, not the permit for the Residence, which was not part of the Harvester’s Square development.
Aug. 18, 2006 The Residence failed the final inspection, due to several build- ■ ing code violations and other problems.
Aug. 24, 2006 The McMillins purchased the Residence from- Ewing.-
Aug. 26, 2006 The McMillins discovered the replacement blue card and the final inspection report in a kitchen drawer at the Residence. They requested that Ewing remediate the problems with the Residence, but Ew- . ing was unresponsive despite the McMillins’ repeated requests that he correct the problems.
Oct. 9, 2006 A home inspector inspected the Residence and identified numerous items in need of maintenance and repair, including several building code violations.
Oct. 2006 The McMillins contacted the Mississippi Board of Contractors and were notified that Ewing was not licensed.
Oct, 21, 2006 The McMillins sent a letter to Ewing, Deas, and Guyton, and cop *959 ied the City. The McMillins stated that they had notified the City that Ewing was unlicensed. They also requested a return'of the purchase price of the Residence due to the numerous problems that Ewing had failed to correct.
Oct. 26, 2006 In a letter to the McMil-lins, Guyton claimed that his business partnership with Ewing had dissolved in April 2006, releasing Guyton from liability for the Residence.
Oct. 30, 2006 In a telephone conversation with Terry McMillin, Deas denied any involvement with the Residence.
Oct. 30, 2006 Deas sent a letter to the McMillins stating, “I am not and have never been involved in the construction of your home. The inclusion of my name on any records in the Building Department of the City of Tupelo was the result of a clerical error. It is my understanding you have already been made aware of this fact, but Marilyn Vail or another employee of the Building Department can provide confirmation.” Deas sent a copy of this letter to the City of Tupelo, and it was placed in the permit file for the Residence.
Nov. 20, 2016 Terry McMillin went to the permit office and talked to Vail. He testified that, when he asked Vail whether Deas had been involved in the construction of the Residence, Vail did not answer and told him to look at the permit file. Vail denied that Terry McMillin had asked her about Deas. Terry McMillin testified that, when he went upstairs to see the permit file, the clerk refused to let him see it.
Dec.' 7, 2006 The McMillins sued Ewing for breach of contract and fraud in the Chancery- Court of Lee County. .
■Jan. 10, 2007 Vail put a memo in the permit file that provided the following narrative: “Approximately one year ago, Joey Guyton and Jamie Ewing dissolved their partnership. Joey held the license for their business. Under state law, Jamie had 6 months to obtain a license before he would be . in violation of the law for not having a ,. contractor’s..license.[4] In the . mean time, Jamie’s attorney, Lawrence ■ Dees [sic], agreed to take responsibility for his projects until Jamie could obtain his license. Jamie did obtain his state and local license in September 2006. I transferred all the previous permits to his responsibility.” . Vail.testified that she placed a.copy of this memo ,in the permit files of the Residence and all the other properties listed in Guyton’s April 11, 2006, letter, and that the purpose of the memo was to provide information as to what had occurred.
Aug. 23, 2007 The McMillins served a notice of claim on the City based on Vail’s negligence in allowing construction to continue under Ewing, an unlicensed contractor.
Dec. 2007 The McMillins issued a subpoena for the City’s records, and for the first time they received the permit file. The April 6, 2006, letter was not in any of the subpoenaed records. Terry testified that they decided not to initiate litigation against the City because the permit file, including Vail’s January 2007 memo, showed that Deas had succeeded Guyton as the licensed contractor for the Residence.
*960 Dec. 2008 The McMillins joined Deas in their chancery court suit. Terry McMillin testified that they joined Deas in reliance on Vail’s January 2007 memo.
Jan. 6, 2009 E-wing submitted an affidavit saying Deas had not been involved in constructing the Residence.
Mar. 18, 2010 Deas asked to be voluntarily dismissed from the McMillins’ suit and attached an affidavit from Vail. Vail’s affidavit explained that she erroneously had listed Deas as the licensed contractor on the building permit for the Residence. Vail stated that, if she had realized that the Residence had no licensed contractor when Guyton withdrew, “construction would have stopped until a licensed contractor was in place.” Deas also attached his April 5, 2006, letter in which he assumed responsibility for Guyton’s Harvester’s Square permits. The McMillins, unsure what was true, elected not to dismiss Deas from the suit.
Nov. 2011 The Chancery Court of Lee County granted summary judgment to Deas on the ground that his listing as the licensed contractor was the result of a clerical mistake.
Mar. 17, 2011 The McMillins submitted their second notice of claim against the City.
Oct. 13, 2011 The McMillins filed the instant complaint against the City in the Circuit Court of Lee County.

B. Standard of Review

¶ 34. The circuit court judge is the finder of fact in a lawsuit brought under the Mississippi Tort Claims Act. Miss.Code Ann. § 11-46-13(1) (Rev.2012). This Court affords a trial judge sitting without a jury the same deference as a chancellor. City of Jackson v. Sandifer, 107 So.3d 978, 983 (Miss.2013). If the circuit court’s fact findings are supported by substantial, credible, and reasonable evidence, then this Court must affirm. City of Jackson v. Lewis, 153 So.3d 689, 693 (Miss.2014). We will not disturb the circuit court’s conclusions unless they were manifestly wrong, cleaiiy erroneous, or resulted from the application of the wrong legal standard. Id. The circuit court has the sole authority to determine the credibility of witnesses. City of Jackson v. Lipsey, 834 So.2d 687, 691 (Miss.2003). Additionally, the circuit court, as the fact finder, is entrusted with resolving conflicts in the evidence. Borne v. Estate of Carraway, 118 So.3d 571, 581 (Miss.2013).

C. Analysis

1. Equitable estoppel

¶ 35. Under the Mississippi Tort Claims Act, a claimant must commence an action “within one (1) year after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based.” Miss.Code Ann. § 11 — 46—11(3)(a) (Rev.2012). Statutory tolling periods extend the time the plaintiff has to commence an action. Id.
¶36. The alleged actionable conduct that formed the basis of the McMillins’ circuit court lawsuit against the City occurred in 2006 and 2007. The McMillins filed their first notice of claim against the City in August 2007. Terry McMillin testified that the plaintiffs received the permit file for the Residence in December 2007. The permit file did not contain Deas’s letter of April 5, 2006, but it did contain Vail’s January 2007 memo stating that Deas had succeeded Guyton as the licensed contractor for the Residence. Terry McMillin testified that, because the permit file showed that Deas had taken over as the licensed contractor for the Residence, no misconduct by the City was *961 apparent, so the McMillins decided not to sue the City. Terry McMillin testified that, in March 2010, during the litigation against Deas, he received Vail’s affidavit stating that she mistakenly had, listed Deas as the licensed contractor for the Residence. At that time, Terry McMillin also received Deas’s letter dated April 5, 2006. Based on' this new information, on March 17, 2011, the McMillins filed a second notice of claim against the City, and they filed suit against the City on October 13, 2011.
¶37. The circuit court found that the McMillins’ lawsuit against the City was time barred, but that the City was equitably estopped from raising the time bar as a defense due to intentionally misleading conduct by Vail., The circuit court made two fact findings regarding Vail’s conduct that are central to this case. First, the circuit court found that Vail’s substitution of Deas as the licensed contractor after Guyton’s withdrawal was a clerical mistake caused by Vail’s misreading the letters from Guyton, Ewing, and Deas. Second, the circuit court found that Vail had.plaeed the January 2007 memo in the permit file in an effort to “cover up her purportedly ‘honest mistake.’ ”
¶ 38. To prevail on a claim of equitable estoppel, a plaintiff must prove by a preponderance of the evidence that “(1) it was induced by the conduct of [the defendant] not to file its complaint sooner, (2) resulting in its claim being barred by the [applicable] limitations, and (3) [the defendant] knew or had reason to know that such consequences would follow.” Townes v. Rusty Ellis Builder, Inc., 98 So.3d 1046, 1055 (Miss.2012). Also, the defendant’s conduct must have been inequitable. Miss. Dep’t of Public Safety v. Stringer, 748 So.2d 662, 665 (Miss.1999).
¶ 39. I would hold that the circuit court’s finding that the elements of equitable- estoppel were met was supported by substantial evidence and was not manifestly wrong or clearly erroneous. The circuit court’s finding that the permit file showed that Deas had succeeded Guyton as the licensed contractor for the Residence was substantially supported by contents of the permit file. Although the permit file contained an October 30, 2006, letter from Deas denying any involvement with the Residence, all representations by the City contained in the permit file, including Vail’s January 2007 memo, were to the effect that Deas had succeeded Guyton as the licensed contractor. The circuit court was entitled to rely on- Terry McMillin’s testimony that the permit file, which showed that a licensed contractor was in place at all times, had induced the McMil-lins not to sue the City. Terry McMillin’s testimony in this regard was corroborated by the fact that the McMillins did not sue the City until they had received Vail’s affidavit, in which Vail admitted that she mistakenly had- listed Deas as the contractor. Further, thé circuit court was entitled to weigh Vail’s credibility and to find that her placement of the January 2007 memo in the file was not innocent, but rather was an intentional effort to conceal her mistake.[5] And it is elementary that Vail, as a public official, reasonably should have known that placing misinformation in the permit file, a public record, could cause litigation to be delayed or otherwise affected. Certainly, placing intentionally misleading information identifying the responsible licensed contractor in a permit file *962 can be considered inequitable conduct. Applying this Court’s deferential standard of review,. I would affirm the circuit court’s finding that the City was equitably es-topped from raising the statute of limitations as.a defense to the McMillins’ lawsuit.

2. Liability under the Mississippi Tort Claims Act

¶ 40. The City claimed immunity under Mississippi Code Section IT — 46—9(l)(h), which provides:
(1) A governmental entity and its employees acting within the course and scope' of their employment or duties shall not be liable for any claim:
[[Image here]]
(h) Arising out of the issuance, denial, suspension or revocation of, or the failure or refusal to issue, deny, suspend or revoke any privilege, ticket, pass, permit; license, certificate, approval, order or similar authorization where the governmental entity or its employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked unless such issuance, denial, suspension or revocation, or failure or refusal thereof, is of a- malicious or arbitrary, and capricious nature;
Miss.Code Ann. § 11 — 46—9(l)(h) '(Rev. 2012).
¶ 41, The^ circuit court found that Vail had acted arbitrarily and capriciously because -her mistake in listing- Deas as the contractor for the Residence had violated her duty as the permit clerk to ensure that builders of residential property in the City are licensed. The circuit court found that the City, acting through the permit office, had duties to:
(1) ensure that a licensed contractor] was working on the Home for the entirety of the construction; (2) on the with-. drawal of the Guyton license, stop construction; (3) prevent construction from resuming until such time as a licensed contractor agreed' to be responsible for the construction; (4) properly process the Guyton withdrawal; ■ (5) stop construction when the Permit expired; and (6) refrain from placing in the file misleading untruthful papers.
¶ 42. The majority finds that the circuit court erred in finding that the City had these" duties. In so finding, the majority relies on Mississippi Code Section 73-59-17, which provides:
The building official, or other authority charged with the duty of issuing building or similar permits, of any municipality or county, shall refuse' to issue a permit for any undertaking which would classify the applicant as a residential builder or remodeler under this chapter unless the applicant has furnished evidence that he is either licensed as required by this chapter or exempt from the requirements of this chapter. The building official, or other authority charged with the duty of issuing building or similar permits, shall also report to the board the name and address of any person who, in his opinión, has violated this chapter by accepting, or contracting to accomplish,- work which would classify the person as a residential builder or remodeler under this chapter without a license or acknowlédgment.
Miss.Code Ann, § 73-59-17 (Rev.2012). The majority finds that, because Guyton was licensed when the City issued the permit, the City violated no duty under this statute. Even assuming that Section 73-59-17 imposed no duties on the City beyond refraining from issuing a building permit to an unlicensed contractor, the record in this case shows that a city ordinance imposed additional duties upon the permit office.
*963 ¶43. In her affidavit, Vail testified about Guyton’s presentation of the handwritten note on April 4, 2006, stating that he was withdrawing all permits attached to his contractor’s license. She stated:
I told Mr. Guyton that 1 needed the statement notarized and that he needed to state he released the.permits so that construction could continue under th.e same permits once a licensed contractor took over. Otherwise, construction on the houses under construction pursuant to the various building permits in his name would have to stop and could not begin again until a new building permit was issued. This is a requirement of Tupelo’s Development Code.
(Emphasis added.) Vail rendered further testimony about the code requirement at the trial. She acknowledged that the city ordinance requiring that the - City stop construction upon the withdrawal of the licensed contractor associated with the permit was contained in the Tupelo Development Code that had been in place until November 1, 2013. She explained that, according to this city ordinance, a licensed contractor who quits must release the permit so construction can continue under a new licensed contractor, or construction must stop and cannot begin anew until a new permit is issued. In Vail’s affidavit, she stated that, if she had realized that the Residence was without a licensed contractor during its construction, “construction would have been stopped until a licensed contractor was in place.” David Wammack, the City’s chief building inspector, also testified about the ordinance, stating that “one of the requirements of the City of Tupelo Code of Ordinance is that there be a licensed contractor on the project....”
¶ 44. The city ordinance provided a basis for the circuit court’s finding that the City had a duty to ensure that a licensed contractor was working on. the Residence and, when Guyton withdrew, .to stop construction unless Guyton released the permit to another licensed contractor. The circuit court found that Vail had breached that duty by listing Deas erroneously as the successor contractor.on the Residence, and that this action was . arbitrary , and capricious. The majority finds that Vail did not act- arbitrarily and capriciously because her listing of Deas was a clerical mistake that cannot rise to the level,of arbitrary and capricious action as a matter of, law. I disagree.. As the majority recognizes, “the. failure of. an agency to abide by its rules is per se arbitrary.and capricious as is the failure of an .administrative body to conform to prior procedure without adequate explanation for the change.” Lowe v. Lowndes Cty. Bldg. Inspection Dep’t, 760 So.2d 711, 714 (Miss.2000) (quoting Miss. Dep’t of Envtl. Quality v. Weems, 653 So.2d 266 (Miss.1995)).' The circuit court held that Vail’s actions were arbitrary and capricious because, in listing Deas as the contractor for the Residence, she failed to follow the applicable rules. Because the evidence supported the finding that Vail failed to follow a city ordinance, I would affirm- the circuit court’s finding that Vail’s error-in listing Deas as the licensed contractor for the Residence was. arbitrary and capricious.
¶45. I also would affirm the circuit court’s finding that Vail acted arbitrarily and capriciously by placing the January 2007 memo in the permit file. Although Vail testified that, when she authored the memo, she legitimately believed that Deas had succeeded Guyton as the licensed contractor for the Residence, the circuit court was entitled weigh the evidence and make a determination about. Vail’s credibility. Lipsey, 834 So.2d at 691. The circuit court’s finding- that Vail intentionally had placed false information- in the permit file was supported by substantial evidence. *964 The permit file ■ contained Deas’s October 26, 2006, letter denying any involvement with thé Residence’s construction and stating that the inclusion of his name in the permit file was the result of a clerical error by the City. Terry McMillin testified that,-on November 20, 2006, he went to the permit office and asked Vail whether Deas had been involved in the construction, and she responded by directing him to the permit file, which he was unable to obtain. And missing from the permit file was the April 5, 2006, letter that, was the key to understanding that Deas’s listing as the contractor was erroneous. This evidence strongly supported the circuit court’s credibility determination that Vail’s intent when she authored the January 2007 memo was to make it appear that a licensed contractor had been assigned to the construction of the Residence at all times.
¶46. I next address the City’s argument that Vail’s actions were subject to discretionary-function immunity under Mississippi Code. Section 11 — 46—9(l)(d), which states:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
[[Image here]]
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;....
Miss.Code Ann. § 11 — 46—9(l)(d) (Rev. 2012). A ministerial function is one that is “positively imposed by law.” Little v. Miss. Dep’t of Transp., 129 So.3d 132, 136 (Miss.2013) (citing Pratt v. Gulfport-Biloxi Reg’l Airport Auth., 97 So.3d 68, 72 (Miss. 2012)), The City had a duty, positively imposed by its ordinance, to ensure that, if a licensed contractor withdrew, another was substituted or the construction halted until a new permit was issued. The City had no discretion to disobey this mandate. The City’s duty under the ordinance was ministerial, not discretionary, and the City was not entitled to discretionary-function immunity.
' ¶ 47. The circuit court also held that the City failed to exercise ordinary care, a finding that implicates immunity under Mississippi Code Section ll-46-9(l)(b). That section provides:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
[[Image here]]
(b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;
Miss.Code Ann. § ll-46-9(l)(b) ' (Rev. 2012). Under this section, a governmental entity is “protected from liability while performing or failing to perform a statutory duty so long as ordinary care- is exercised.” Lang v. Bay St. Louis/Waveland Sch. Dist., 764 So.2d 1234, 1240 (Miss. 1999). “The question of whether ordinary care was, in fact, exercised is for the trial court, sitting without a jury, to decide.” Stewart ex rel. Womack v. City of Jackson, 804 So.2d 1041, 1048 (Miss.2002) (quoting Lang, 764 So.2d at 1240). “The standard of care applicable in cases of alleged negligent conduct is whether the party charged with negligence acted as a reasonable and prudent person would have under the same or similar circumstances.” Donald v. Amoco Prod. Co., 735 So.2d 161, 175 (Miss.1999).
*965 ¶ 48. The circuit court found that the City had not acted with ordinary care in the performance of its duties imposed by law. The circuit court stated:
That the office placed Deas’s name as the contractor of record was, at first, a mistake. However, when the office was put on notice by Deas that such a mistake had been made, ordinary care required the Defendant to notify the people concerned and not subsequently file a paper in plain contradiction of the truth. The Defendant was also put on notice by letters from Dr. McMillin, Deas, and calls from [the McMillins’ realtor] Sue Gardner. Even a visit by Dr. McMillin to their office about why Deas’s name was associated with this Home did not provide any answers to the Plaintiffs. Instead, Vail magnified the error by placing the January 2007 Memo in the Plaintiffs[’] Permit File stating Deas was “taking responsibility” for the Home. Even when asked by Dr. McMillin directly, Vail refused to answer his questions, compounding the error. Vail told Dr. McMillin to go look at his Permit File but when he asked to see his file, another City employee refused to let him see his own file.
The paperwork in the Home’s Permit File certainly shows that questions were being asked by the Plaintiffs, that the Plaintiffs had hired an attorney and were contemplating filing suit, and that Sue Gardner and the Plaintiffs were telling [Vail that] Ewing was not licensed with the Mississippi Board of Contractors. Defendants still continued to ignore the problem and did not use ordinary care to address the situation and relieve the confusion. Vail did the opposite by placing the January 2007 memo in the file. Ordinary care, at the very least, would require Vail to call, mail a letter or email the Plaintiffs about issues they were having with their home. This was, at the very least, negligent misrepresentation.
These faet findings were fully supported by the record. I would find that the circuit court did not manifestly err in finding that the City failed to exercise ordinary care in the performance of the duties imposed by the ordinance.
¶ 49. The circuit court held that, but for Vail’s failure to process Guyton’s withdrawal from the construction of the Residence properly, construction would have stopped in April 2006. And, the circuit court held that, if Vail had properly filed the April 5, 2006, letter and refrained from placing the January 2007 memo in the permit file, acts that falsely implicated Deas as the licensed contractor, then the McMillins would not have incurred legal fees in their litigation against Deas. I would find that the circuit court committed no legal error in making these proximate-cause findings, which were supported by substantial evidence.
¶ 50. The circuit court awarded the McMillins $9,319.23 as damages for the cost of repairing the shoddy work that was performed on the Residence after Guyton’s departure on April 11,- 2006. The circuit court also found that the McMillins were entitled to damages in the amount of the legal fees they had incurred in their suit against Deas. On appeal, the City complains that the award of $105,894.39 in legal fees was erroneous because it included fees that the McMillins had incurred in their litigation against Ewing and the two banks. Because the circuit court’s findings do not support the McMillins’ recovery of attorney fees incurred in their litigation against Ewing and the banks, nor did they claim a right to recover such fees, I would reverse the award of legal fees and remand for the circuit court to award *966 the McMillins the amount of legal fees they incurred in litigation against. Deas,
¶ 51. In conclusion, Vail’s clerical mistake in substituting Deas as the licensed contractor for the Residence on April 11, 2006, was arbitrary and capricious because Vail’s actions violated a city ordinance. I also would hold that the City is not entitled to discretionary-function immunity, and I would affirm the chancellor’s fact' finding that the City failed to exercise ordinary care in the performance of duties imposed by a city ordinance. And I believe the majority errs by reweighing the evidence before the circuit court and finding that Vail’s misconduct was limited to her clerical mistake.' The circuit court found that Vail intentionally placed a false memorandum in the permit file that caused the- McMillins to drop their action against the City and pursue a chancery court suit against Deas.
¶ 52. I would affirm the circuit court’s finding that the City was equitably es-topped from raising the statute of limitations defense due to Vail’s misleading conduct. I also would affirm the circuit court’s finding that the City was not immune from liability under the Mississippi Tort Claims Act. I would affirm in part and reverse in part and remand for the circuit court to award the McMillins legal fees in the amount that they incurred in litigation against Deas.
KING, J., joins this opinion.

. Trial testimony established that Deas is an attorney and a licensed general contractor.

. At the trial, it was established that Vail’s belief that Ewing had a six-month grace period in which to become licensed was erroneous, ' ■ ■

. The majority simply ignores the circuit court’s finding that Vail engaged in intentionally misleading conduct, holding that Vail only made a clerical mistake that cannot, as a matter of law, form a basis for equitable es-toppel. In so doing, the majority invades the fact finding function of the circuit court.