# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00548-COA

CITY OF JACKSON, MISSISSIPPI                    APPELLANT

v.

SHERMAN JACKSON                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/02/2015 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | GREGORY RONELL BURNETT |
| ATTORNEY FOR APPELLEE: | LAWRENCE MURRAY COCO III |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | AWARDED APPELLEE $22,829.26 IN ECONOMIC DAMAGES AND $50,000 IN NONECONOMIC DAMAGES |
| DISPOSITION: | AFFIRMED: 05/17/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     In this Mississippi Tort Claims Act (MTCA) case, the City of Jackson (City) appeals the judgment awarding damages to Sherman Jackson due to injuries he sustained when Jackson Police Department officers shot and arrested him. Because the record supports the Hinds County Circuit Court's findings that the officers acted in reckless disregard for the public's safety, which precluded tort-claim immunity, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     In the early morning hours of January 1, 2011, Jackson and Frederick Moore traveled

to Moore's grandmother's house on Santa Rosa Street in Jackson, Mississippi. When they arrived in the driveway, Officer Brian Jones, who was responding to a call about gunshots fired in the area, pulled in behind Jackson and Moore.

¶3.     At this time, Jackson and Moore claimed Officer Jones and Officer Marcus Dobson, who arrived shortly after Officer Jones, got out of their cars with their guns drawn. While Officer Jones questioned Moore, Jackson emerged from the car, and Officer Jones attempted to conduct a field interview with him. Jackson declined and ran away. Jackson claimed he ran because the officers scared him by pointing their weapons at him. Officers Jones and Dobson refuted that they drew their weapons before Jackson ran away from the scene.

¶4.     Officer Jones pursued Jackson, followed by Officer Dobson. Officer Jones stated Jackson ran while trying to hold on to or reach into his back pocket. Jackson testified that he ran with his hands up the entire time. Regardless, during the pursuit, Officer Jones heard a gunshot. Officer Jones then fired towards Jackson, striking him in the left forearm. Officer Dobson later informed Officer Jones that he accidentally fired his weapon, which caused the initial gunshot heard by Officer Jones. After subduing Jackson, the officers then placed his hands behind his back and handcuffed him while they waited for medical response to treat the gunshot wound to his arm. Neither Officer Jones nor Officer Dobson saw a weapon on Jackson.

¶5.     On January 6, 2012, Jackson sued the City[1] primarily for negligence, intentional

---

[1] Jackson initially sued the City; Rebecca Coleman, individually and in her capacity as chief of police for the Jackson Police Department; and John Does 1-15, in their individual and official capacities. All defendants except for the City were dismissed.

and/or negligent infliction of emotional distress, and civil assault and battery.

¶6.     On February 16, 2012, the City filed a motion to dismiss and claimed immunity under the MTCA. On September 17, 2013, Jackson filed an amended complaint, where he added a count of reckless disregard for his rights and safety. The City subsequently filed a motion for summary judgment, which the trial court denied on October 27, 2014.

¶7.     A bench trial occurred on February 11, 2015. The trial court entered a final judgment on March 2, 2015, and found that the officers acted in reckless disregard of Jackson's safety and that tort immunity under the MTCA did not apply to the City. Accordingly, the trial court awarded Jackson medical expenses of $22,829.26 and $50,000 for pain and suffering. The City appeals this judgment.

## STANDARD OF REVIEW

¶8.     "'A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor,' and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *City of Jackson v. Perry*, 764 So. 2d 373, 376 (¶9) (Miss. 2000) (citing *Puckett v. Stuckey*, 633 So. 2d 978, 982 (Miss. 1993)). "This Court will not disturb those findings unless they are manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied." *Id.* (citation omitted). "However, th[is] Court reviews conclusions of law, including the proper application of the MTCA, de novo." *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 20 (¶21) (Miss. Ct. App. 2012) (citing *City of Jackson v. Presley*, 40 So. 3d 520, 522 (¶9) (Miss. 2010)).

## ANALYSIS

¶9.    The City asserts that the trial court erred in failing to find that the City was entitled to sovereign immunity pursuant to Mississippi Code Annotated section 11-46-9 (Rev. 2015). Jackson responds that the trial court properly found that the totality of the circumstances illustrated the officers acted with reckless disregard, which barred immunity.

¶10.    "The MTCA is the exclusive remedy for filing a lawsuit against [a] governmental entit[y] and its employees." *City of Jackson v. Brister*, 838 So. 2d 274, 278 (¶15) (Miss. 2003). Section 11-46-9(1)(c) states:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection *unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury*.

(Emphasis added). The purpose of this statute is "to protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim." *Perry*, 764 So. 2d at 379 (¶25). Therefore, immunity applies to an officer acting in the scope of his employment unless it is determined that he acted in reckless disregard of the safety of an individual not engaged in criminal activity. *Id.*

¶11.    The Mississippi Supreme Court has held that reckless disregard is "more than mere negligence, but less than an intentional act." *City of Jackson v. Lewis*, 153 So. 3d 689, 693 (¶5) (Miss. 2014). The supreme court further stated that reckless disregard occurs "when the 'conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.'" *Id.* at 694 (¶5) (quoting *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 995 (¶10) (Miss. 2003)).

4

The supreme court also described reckless disregard as a "conscious indifference" to the consequences of an action, almost evincing a "willingness that harm should follow." *Maye v. Pearl River Cty.*, 758 So. 2d 391, 394 (¶19) (Miss. 1999) (quoting *Orthopedic & Sports Injury Clinic v. Wang Labs. Inc.*, 922 F.2d 220, 224 n.3 (5th Cir. 1991)).

¶12.    An appellate court utilizes a totality-of-the-circumstances standard in order to determine reckless disregard for purposes of defeating immunity under the MTCA. *Davis v. City of Clarksdale*, 18 So. 3d 246, 249 (¶11) (Miss. 2010). "[The] determination of the nature of the officers' actions is judged on an objective standard with all the factors that they were confronted with, taking into account the fact that the officers must make split-second decisions." *City of Jackson v. Powell*, 917 So. 2d 59, 72 (¶47) (Miss. 2005) (citation omitted).

¶13.    Because the test to overcome immunity under the MTCA is the totality of the circumstances, this Court must consider all of the events that occurred. Both parties stipulated that Officers Dobson and Jones attempted to conduct a field interview of Jackson. When Jackson declined to participate, he then ran away and the officers pursued him. Jackson contends this pursuit illustrated the officers' first act of reckless disregard because the officers violated a general order by pursuing him.

¶14.    The Jackson Police Department utilizes a set of general orders establishing police protocol in any given scenario. General Order 600-33 outlines the procedures for conducting field interviews. Section 600-33(IV)(B)(6) states that "[s]uspects are not required, nor can they be compelled, to answer any questions posed during field interviews. Failure to respond

5

to an officer's inquiries is not, in and of itself, sufficient grounds to make an arrest although it may provide sufficient justification for additional observation and investigation." Violation of general orders is not conclusive proof of reckless disregard, but is to be considered in conjunction with the remaining circumstances. *Brister*, 838 So. 2d at 280 (¶21).

¶15. There was conflicting testimony as to whether Officers Jones and Dobson arrived on the scene and immediately drew their weapons. Jackson testified that their aggressive behavior is what caused him to flee from the scene when they would not let him go inside Moore's grandmother's house. Richard Brooks, Jackson's expert, stated that "there was no reason for [Officers Dobson and Jones] to come out with their weapons drawn[.]" The officers indicated that they did not approach Moore or Jackson with their guns drawn. Regardless of Jackson's reason for fleeing, Brooks testified that an individual is free to leave a field interview at any point unless that person is suspected of committing a crime. Officer Jones himself testified that Jackson was free to leave the interview. Therefore, under General Order 600-33, Officers Jones and Dobson should not have pursued Jackson.

¶16. The City disputes that this violation rose to the level of reckless disregard because Officer Jones was justified in his pursuit based on the nature of the call, Jackson's refusal to turn out his pockets, and Jackson's alleged antagonism towards the officers. Further, Sergeant Steve McDonald, a defense expert witness, stated the officers did not even reach the field-interview stage due to Jackson's evasion from the first point of contact. This arguments fails, however, as the parties stipulated the officers conducted a field interview

6

of Jackson. Therefore, this pursuit contributed to a finding of reckless disregard. But this is merely one instance in the totality of the circumstances.

¶17. Next, this Court must consider whether Officer Dobson's act of pulling his weapon and misfiring constituted reckless disregard. General Order 600-10 governs the use of force. Section (IV)(A)(1) of the order states that any discharge of a firearm is deadly force. Additionally, section (IV)(B)(1) dictates that "[an] [o]fficer shall not draw or display [his] weapon unless: There is a threat or probable cause to believe there is a threat of serious bodily harm or death to the officer or others."

¶18. Officer Dobson testified that Officer Jones was ahead of him during their pursuit. Officer Dobson also testified that he attempted to assist Officer Jones in apprehending Jackson when he pulled his weapon and accidentally fired. Expert witnesses from both sides testified that officers are trained to never place their finger in the trigger guard and on the trigger unless they are prepared to fire. Brooks, Sergeant McDonald, and Chief Joseph Wade, a second expert witness for the City, all agreed that Officer Dobson acted negligently when he placed his finger on the trigger while he removed the weapon from his holster, causing him to accidentally shoot. Thus, this action weighs further in favor of finding the officers acted with reckless disregard.

¶19. While Officer Dobson violated General Order 600-10, this violation alone does not support a finding of reckless disregard. However, Officer Dobson's discharge directly led to Officer Jones's shooting of Jackson. General Order 600-10(IV)(A)(3) states: "Officers shall not fire at those suspected of committing misdemeanors, nor fire upon persons caught

7

in suspicious circumstances who are not armed and who are not resisting or confronting the officer or any other person, but are merely fleeing from the officer[.]" Further, the supreme court "has held that the police may exert physical force in overcoming resistance during an arrest, but they may only use that force which is reasonably necessary to respond to the resistance encountered." *Powell*, 917 So. 2d at 71 (¶47) (citing *Webb v. Jackson*, 583 So. 2d 946, 951 (Miss. 1991)).

¶20.    Importantly, Jackson was not engaged in criminal activity at the time of the incident. Officer Jones claimed he believed Jackson fired towards him because he ran while trying to reach into his back pocket. Jackson and Moore contradicted this testimony, as both testified that Jackson ran with his hands up the entire time. Regardless, Officers Jones and Dobson responded to a call for the shooting of a gun inside the city limits, which is a misdemeanor crime. Also, as previously discussed, the officers were conducting a field interview, meaning Jackson could have left at any time.

¶21.    Additionally, the expert testimony established that Officer Jones should not have shot at Jackson despite his belief that Jackson initially fired towards him. Brooks stated that Officer Jones should not have fired because he never saw Jackson possess a weapon. Chief Wade testified that Officer Jones needed to make sure Jackson had a gun and determine where the shot originated from before shooting Jackson. Chief Wade also stated that he would not have shot at Jackson under these circumstance. Lastly, Sergeant McDonald testified that Officer Jones reasonably believed Jackson fired towards him and may have been justified in shooting Jackson under the circumstances, but only if Jackson did not run with

8

his hands in the air. This testimony supports a finding of reckless disregard.

¶22. As a final point, Jackson alleges the officers' failure to render first aid to his gunshot wound further contributed to their recklessness. After Jackson was in custody, he was placed in handcuffs with his hands behind his back. Jackson claims he experienced great pain and pleaded with the officers to adjust his restraints and tend to his wound. Brooks and Chief Wade testified that an officer could use his discretion to adjust restraints if a suspect is injured. However, testimony also indicated that the officers did not have sufficient training to treat gunshot wounds. The officers properly followed procedure by dispatching an ambulance to treat and transport Jackson to the hospital. Therefore, the failure to provide medical treatment did not contribute to a determination of reckless disregard.

¶23. While the totality of the circumstances indicates that Officers Jones and Dobson acted with reckless disregard, the analysis does not end here. This Court has held that "immunity under [section] 11-46-9(1)(c) applies only to claims brought by individuals who are engaged in criminal activity at the time of the injury." *Powell*, 917 So. 2d at 70 (¶42) (citing *City of Jackson v. Calcote*, 910 So. 2d 1103, 1111-12 (¶26) (Miss. Ct. App. 2005)). After officers detained Jackson, they recovered marijuana from his pocket. Yet this does not necessarily bar Jackson's recovery.

¶24. "It must be shown that the victim was engaged in criminal activity that has a causal nexus to the wrongdoing of the tortfeasor." *Durn*, 861 So. 2d at 997 (¶20) (citing *Perry*, 764 So. 2d at 379 (¶25)). Further, "[t]he criminal activity supporting the exemption must be more than fortuitous[.]" *Id.* As such, Jackson's possession of marijuana does not causally relate

to Officer Jones's pursuit or shooting of Jackson based on a possible firearms misdemeanor. Therefore, immunity does not apply.

¶25.    Based on the totality of the circumstances, the trial court found that Officers Jones and Dobson acted with reckless disregard.  The evidence sufficiently supports this finding, and the trial court correctly applied the law to determine that the City was not entitled to immunity.  Thus, this Court affirms.

¶26.    **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.  CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**