# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00805-COA

**CITY OF JACKSON, MISSISSIPPI**                                        **APPELLANT**

**v.**

**WAVIE GRAHAM**                                                            **APPELLEE**

DATE OF JUDGMENT:                05/15/2016
TRIAL JUDGE:                     HON. WILLIAM A. GOWAN JR.
COURT FROM WHICH APPEALED:       HINDS COUNTY CIRCUIT COURT,
                                 FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:         JAMES RICHARD DAVIS JR.
                                 MONICA DAVIS JOINER
ATTORNEYS FOR APPELLEE:          BENJAMIN SETH THOMPSON
                                 STACY EVERETT PEPPER
NATURE OF THE CASE:              CIVIL - PERSONAL INJURY
DISPOSITION:                     AFFIRMED - 09/12/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     This appeal arises from a notice of claim filed by Wavie[1] Graham against the City of

Jackson pursuant to the Mississippi Tort Claims Act (MTCA). Graham asserted that Officer

Undrae Martin acted with reckless disregard for the safety of others when he hit her truck in

his patrol car. Following a bench trial, a judgment was entered in favor of Graham, and

damages were awarded. Following the calculation of Graham's medical expenses, an

amended order was entered, and damages were awarded to Graham in the amount of

---

[1] At certain points in the record, Graham's first name is also spelled "Waivie."

$121,530.87. It is from this judgment that the City now appeals. After our review, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. Around November 12, 2010, at approximately 10:30 p.m., Graham and Annie Robinson left a church service at Word of Truth Church located on Northside Drive near Flag Chapel Road. Graham and Robinson were headed directly across the street to Graham's house after the service. Graham testified she looked both ways before crossing the four-lane highway to enter into her driveway, and that a car passed right before she drove into the street. Testimony determined that Graham and Robinson were headed somewhat eastbound on Northside Drive prior to impact.

¶3. Officer Martin proceeded down Northside Drive, toward Clinton, responding to a "priority two" emergency call[2] without using his emergency lights or siren. Officer Martin testified that use of sirens and police lights when answering a "priority two" call is discretionary. As Graham and Robinson crossed the street, Officer Martin struck the side of Graham's truck with his patrol car, a Crown Victoria.

¶4. Antonio Wallace, a witness at trial, testified that right before the accident, he heard what sounded like someone "racing cars." At the time, Wallace was the owner of an automotive shop located almost directly in front of Graham's church. Wallace also testified

---

[2] Officer Martin testified that he was answering a "disturbance of the peace" call, which is classified as a "priority two" call. According to Martin's testimony, a "level-two priority call" is when property is being damaged or human life is being threatened. The dispatcher documented loud music playing in the area, "AVD subjects hanging out," and a knocked out street light as the reason for the "priority two" call; however, Officer Martin testified he could not remember very well, but he thought the light had been shot out.

that after the crash, Officer Martin exited his vehicle and sat on its hood, while he and another man attended to Graham and Robinson. According to Wallace, Graham was pinned in the driver's side of the vehicle, and Robinson had been ejected from it and was crying.

¶5. Graham filed a notice of claim against the City of Jackson and Officer Martin, pursuant to the MTCA, alleging that Officer Martin acted with reckless disregard for the safety of the public. Graham testified that she could not remember all of the details regarding the accident. Officer Martin testified he suffered blunt-force trauma to his head as a result of the accident and could not recall all the details from that night.

¶6. The trial court used the ten factors the Mississippi Supreme Court previously used when analyzing police-pursuit cases, citing *City of Jackson v. Gray*, 72 So. 3d 491 (Miss. 2011), and determined that the evidence supported a finding that Officer Martin acted in reckless disregard for the safety of others. Therefore, Officer Martin was not covered under the immunity afforded under the MTCA. The City now appeals.

**STANDARD OF REVIEW**

¶7. "A circuit court judge sitting without a jury is afforded the same deference as a chancellor." *City of Jackson v. Lewis*, 153 So. 3d 689, 693 (¶4) (Miss. 2014) (citations omitted). "The circuit court's findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *Id*. (citations and quotation marks omitted). Further, the supreme court has held that "although reasonable minds might differ on the conclusion of whether or not the officer in question acted in reckless disregard, it is beyond [the reviewing] [c]ourt's power to disturb the findings of the trial judge if supported by

3

substantial evidence." *Id.*

## DISCUSSION

**I.      Whether the trial court properly used the ten-point test previously used only in "pursuit cases" to determine whether Officer Martin was guilty of reckless disregard.**

¶8.      The City contends that the trial court erred by attempting to formulate an objective test for "reckless disregard" using a modified form of the ten factors in a pursuit case rather than using precedent on the definition of gross negligence.  The Mississippi Supreme Court has established ten factors to analyze cases where police officers are in pursuit of suspects, which are as follows:

> (1) length of the chase; (2) type of neighborhood; (3) characteristics of the streets; (4) presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; (6) seriousness of the offense for which the police are pursuing the suspect; (7) whether the officer proceeded with sirens and blue lights; (8) whether the officer had available alternatives which would lead to the apprehension of the suspect besides pursuit; (9) existence of a police policy which prohibits pursuit under the circumstances; and (10) rate of speed of the officer in comparison to the posted speed limit.  It is appropriate for trial courts to consider all ten factors, and to look at the totality of the circumstances when analyzing whether someone acted in reckless disregard.

*Gray*, 72 So. 3d at 496-97 (¶17) (citation and quotation marks omitted).

¶9.      We find that the trial court incorrectly applied the ten factors to the facts in this case. However, we agree with the trial court's finding of substantial evidence supporting that Officer Martin acted with reckless disregard for the safety of others.  "A long-standing rule of [our appellate courts] is that we will not reverse a lower court's decision where that court reaches the right conclusion although for the wrong reason." *Briggs v. Benjamin*, 467 So.

4

2d 932, 934 (Miss. 1985); [3] *see also Huffman v. Griffin*, 337 So. 2d 715, 723 (Miss. 1976); *Tex. Gas Transmission Corp. v. City of Greenville*, 242 So. 2d 686, 689 (Miss. 1970).

¶10.    The MTCA "shields the government from liability based on any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." *Lewis*, 153 So. 3d at 693 (¶5) (quotation marks omitted); *see also* Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2012). "An appellate court utilizes a totality-of-the-circumstances standard in order to determine reckless disregard for purposes of defeating immunity under the MTCA." *City of Jackson v. Jackson*, 200 So. 3d 1141, 1145 (¶12) (Miss. Ct. App. 2016) (citation omitted).

¶11.    The record reflects that at trial the court heard testimony from several witnesses, including an accident reconstructionist, to determine whether Officer Martin's actions deprived him of the protections afforded by the MTCA.

¶12.    "Reckless disregard denotes more than mere negligence, but less than an intentional act." *Lewis*, 153 So. 3d at 693-94 (¶5) (citations omitted). Further, "reckless disregard [is found] when the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm

---

[3] In *Briggs*, 467 So. 2d at 934, the supreme court held that since the trial court incorrectly viewed the garnishment action as an attempt to enforce a lien on insurance-policy proceeds, it was error to dismiss the action on that basis; however, because the plaintiff sought to garnish proceeds from the wrong insurance company, a judgment was correctly entered in favor of that insurance company.

involved." *Id*. (quotation marks omitted).

¶13.    Cheryl Grayson and Brenda Matthews stood in front of the church during the time of the collision. Grayson and Matthews testified at trial that Officer Martin drove down Northside Drive at a very high speed. Grayson testified that Officer Martin drove so fast that she stopped talking mid-conversation, because of the loud noise from the speeding. Matthews testified Officer Martin was speeding like a "bat of out hell."

¶14.    Mildred Champion, another witness at trial, testified that Officer Martin sped past her as she was headed to work the night of the collision. She testified she thought Officer Martin lost control of the patrol car given his fast speed. Further, Champion stated that if one approached the hill on Northside drive at a normal speed, that person could brake to avoid making contact with other cars that may be in the street.

¶15.    Tim Corbitt, the City's accident reconstructionist, testified that based on his calculations, Officer Martin's patrol car was traveling between fifty-seven and sixty-eight miles per hour before the crash. The speed limit on the road during the time of the accident was forty miles per hour. Corbitt also noted that if Officer Martin was traveling between fifty-seven and sixty-eight miles per hour at impact, he had to be going faster prior to braking. Corbit further testified that following the crash, the speedometer was stuck on Officer Martin's car at seventy-two miles per hour.

¶16.    Although the use of the police lights and sirens is discretionary for an officer responding to a "priority two" call, Officer Martin testified that the purpose of the lights and siren is to allow citizens to get out of the way. However, Officer Martin neglected to use

6

either one while speeding down the street at approximately 10:30 p.m. Officer Martin also made the decision not to use the lights and sirens while traveling on a street with a hill that prevented him from seeing what was on the other side. The supreme court has held "wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." *Maye v. Pearl River Cty.*, 758 So. 2d 391, 395 (¶21) (Miss. 1999) (quotation marks omitted) (citing *Turner v. City of Ruleville*, 735 So. 2d 226, 229 (¶16) (Miss. 1999)).

¶17. In *Maye*, an officer backed out of the parking space and up an incline, and he did not know what was behind him. *Id*. at (¶24) As a result, the officer backed into a private citizen. *Id*. The supreme court opined that "although [the officer] did not intend to hit [the] car, his actions [rose] to the level of reckless disregard[,] because [the officer] showed a conscious disregard for the safety of others when he backed up the incline entrance to the parking lot knowing he could not be sure the area was clear." *Id*.

¶18. The record reflects that while the trial court relied on the analysis from the "officer in pursuit" cases, the trial court also considered the "totality of the circumstances" based on the set of facts and evidence presented. The record also reflects that while Officer Martin did not intend to hit Graham and Robinson, he showed a conscious disregard for the safety of others when he sped down a darkly lit street without using his emergency lights and the siren to warn other cars of his presence. Therefore, the trial court did not err in finding that there was substantial, credible, and reasonable evidence to support its finding that Officer Martin acted with reckless disregard for the safety of the public and was removed from

7

immunity under the MTCA.

## II. Whether the trial court erred in not requiring expert testimony to determine the causation of Graham's injuries.

¶19. The City argues that the trial court erred by not requiring expert testimony to determine Graham's injuries. We disagree. "Proof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable." *Boggs v. Hawks*, 772 So. 2d 1082, 1085 (¶7) (Miss. Ct. App. 2000); *see also* Miss. Code Ann. § 41-9-119 (Rev. 1993). Further, the supreme court has previously held that, "when a party takes the witness stand and exhibits bills for examination by the court and testifies that said bills were incurred as a result of the injuries complained of, they become prima facie evidence that the bills so paid or incurred were necessary and reasonable." *Jackson v. Brumfield*, 458 So. 2d 736, 737 (Miss. 1984). "However, the opposing party may, if desired, rebut the necessity and reasonableness of the bills by proper evidence." *Id.* "The ultimate question is then for the [fact-finder] to determine." *Id*.

¶20. In its amended final judgment, the trial court acknowledged that Graham, Robinson, and Officer Martin were taken to the hospital after the accident. Graham also testified that she went to several doctors because of the accident. The trial court further determined that it could not be seriously contended by the City that Graham went to the various doctors for anything other than the accident. Accordingly, the trial court found that the City did not rebut any testimony proving that Graham's treatment was a result of the crash. We agree.

¶21. Graham did not need to proffer any testimony from an expert witness regarding

8

causation. She submitted medical bills and records stipulating that she attended physical therapy after the accident. Chaney Harper, the release-of-information coordinator for St. Dominic's Hospital, also authenticated Graham's medical records from the treatment she received. The City's counsel stated that Harper's testimony satisfied the issue of treatment, even though he stated he still had an issue with her testimony proving causation. Further, once Graham submitted the bills and records, the City had the opportunity to rebut her testimony during cross-examination regarding causation.

¶22. Accordingly, this Court finds no error in the trial court allowing Graham's testimony to authenticate her medical records.

¶23. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.**