# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01001-COA

**BABETTE MAXWELL, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATES OF WILLIAM IRWIN, DECEASED, AND LYNDA IRWIN, DECEASED, AND FOR AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF WILLIAM IRWIN, DECEASED, AND LYNDA IRWIN, DECEASED**

APPELLANT

**v.**

**PANOLA COUNTY, MISSISSIPPI**

APPELLEE

DATE OF JUDGMENT:             07/28/2021
TRIAL JUDGE:                  HON. SMITH MURPHEY
COURT FROM WHICH APPEALED:    PANOLA COUNTY CIRCUIT COURT,
                              SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:      LARRY O. LEWIS
                              RALPH EDWIN CHAPMAN
                              DANA J. SWAN
ATTORNEY FOR APPELLEE:        SIDNEY RAY HILL III
NATURE OF THE CASE:           CIVIL - WRONGFUL DEATH
DISPOSITION:                  AFFIRMED - 02/21/2023
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A married couple was driving down a highway in Panola County when a sheriff's deputy suddenly crossed into their lane. The two vehicles collided. The husband died at the scene; the wife died shortly thereafter.

¶2. The couple's estates sued the county for the deputy's alleged negligence, arguing he caused their deaths in violation of state law. After a bench trial, the circuit court found that

the deputy had not been acting in "reckless disregard" by driving into the couple's lane. Bound as we are by a deferential standard of review, we affirm.

## FACTS

¶3. Except for one single point, the facts in this case are uncontested.

¶4. William and Lynda Irwin were driving westbound on Highway 6 through Panola County. "In Panola County, Highway 6 is a four-lane divided highway that runs concurrent with U.S. Route 278." *Irwin-Giles v. Panola County*, 253 So. 3d 922, 924 (¶2) (Miss. Ct. App. 2018). Mrs. Irwin was driving an SUV, going 75 miles per hour in a 65 miles-per-hour zone. Highway 6 was four lanes, separated in the middle by a median patch.

¶5. Unbeknownst to them, Deputy Terry Smith was driving northbound on Lawrence Brothers Road, which intersects with Highway 6. The deputy approached the stop sign at the intersection and continued driving north. Next, the deputy approached the second intersection. At the same time, the Irwins were fast approaching the intersection. There was no stop sign at the second intersection, but there was a "stop bar" that required Deputy Smith to yield to oncoming traffic.

¶6. As Deputy Smith crossed the intersection and drove into the westbound lane of Highway 6, the Irwins' SUV smashed into the deputy's truck. The couple lost their lives as a result of the accident.

¶7. Data retrieved from the black box in his truck would later reveal Deputy Smith did not stop at the stop sign at the intersection of Lawrence Brothers Road and the eastbound lane of Highway 6, nor did he stop before entering the westbound lane. It further revealed the

2

deputy was initially driving 25 miles per hour, and his speed increased to 30 miles per hour as he crossed into the westbound lane.

¶8. Despite this scientific data, Deputy Smith would later repeatedly testify under oath that he recalled "stopping" and "double checking" to make sure traffic was clear.

## PROCEDURAL HISTORY

¶9. The Irwin estates filed suit against Panola County, Panola County Sheriff's Department, and Deputy Terry Smith, stating Deputy Smith acted with reckless disregard for the safety of the Irwins.[1]

### *Summary Judgment*

¶10. Panola County later filed a motion for summary judgment arguing it should be granted dismissal because Deputy Smith was not acting in reckless disregard, and there was undisputed proof that the Irwins were speeding at the time of the accident. The trial court granted the County's motion for summary judgment finding no genuine issues of material fact existed as to whether Deputy Smith acted with reckless disregard. The Estates subsequently appealed from the trial court's order granting the County's motion for summary judgment.

¶11. On appeal, we reversed the grant of summary judgment, finding there was a "genuine issue of material fact as to whether [Deputy] Smith acted in reckless disregard of the Irwins' safety." *Irwin-Giles*, 253 So. 3d at 927 (¶17). In making that finding, we explored several

---

[1] The Irwin estates were originally administered by Beverly Irwin Giles, the sister of Babette Maxwell and the daughter of William and Lynda Irwin. This suit is also brought for and on behalf of the wrongful death beneficiaries of Mr. and Mrs. Irwin.

interrelated issues.

¶12.   First, this Court considered that the Estate "presented evidence that Smith did not stop or even slow down at the stop sign or in the median before proceeding into the westbound lanes of [the] Highway[.]"  *Id.*

¶13.   We also considered the conflicting evidence regarding whether Deputy Smith could see the Irwins' SUV. *Id*.  This Court stated, "The fact that Smith's view was not obstructed permits a reasonable inference that Smith did not look for traffic before he crossed [the] Highway." *Id*.

¶14.   We further determined a fact-finder could conclude from the evidence in the record that Smith "fail[ed] or refus[ed] to exercise *any* care," which our Supreme Court has held could constitute "reckless disregard." *Id*.  Since there were genuine issues of material fact, we reversed and remanded. *Id*.

### *Trial*

¶15.   After remand, the case proceeded to a bench trial.

¶16.   The trial court first heard from the law enforcement officer who arrived at the scene of the accident.  Trooper Justin Ales described the weather conditions on the day of the accident as "clear."  He then stated he did not see anything that would obstruct a driver's view of oncoming traffic.  He also testified the area was mostly "flat" and "level."  When asked how far a driver could see from the intersection, he replied, "a quarter of a mile."

¶17.   The trooper then described the intersection of Lawrence Brothers Road and Highway 6—where the accident occurred.  He testified there was a "[yield] line . . . on both sides of

4

the cross over that indicates a stopping point for oncoming traffic." When asked about the circumstances contributing to the accident, he stated Deputy Smith "failed to yield right of way." The trooper testified that because of the deputy's familiarity with the area, he would have seen oncoming cars if he had stopped his truck and looked.

¶18.    However, Trooper Ales also stated he did not know much of the information ascertained from the black box. Specifically, he stated he did not know that Deputy Smith did not stop at the stop sign or that he accelerated from 25 miles per hour to 30 miles per hour while driving through the intersection. And on cross-examination, counsel for the County asked if the accident seemed typical. The deputy responded, "true."

¶19.    Next, Deputy Smith testified. He stated he did not have on his lights or his sirens, as he was returning to the station after unsuccessfully attempting to apprehend a suspect. He also testified he was familiar with the intersection of Lawrence Brothers Road and Highway 6, as he had driven through it "thousands" of times.

¶20.    The deputy was adamant he "stopped" and made sure traffic was "clear" before driving through the intersection but "did not see anything" coming. When asked if anything obstructed his vision to see oncoming traffic, he responded, "Nothing obstructed it that day as I recall." He continued, "I clearly remember what occurred that day. I stopped. I recall stopping. I recall double-checking, making sure there's no traffic. Accelerated not at a high rate of speed. Accelerated to get through the intersection and proceed [north]."

¶21.    The deputy repeatedly testified he stopped at the intersection. He further stated he was not on his phone or his radio. The deputy said he was "clearly focused on driving" and

5

did not speed through the intersection.

¶22. John Corbitt testified as an expert in accident reconstruction for the Irwin Estates. The expert inspected both cars and downloaded data from each black box. He testified the data showed Deputy Smith did not stop at the stop sign at the Lawrence Brothers Road and Highway 6 intersection, nor did he stop at the second intersection where the Irwins' SUV collided with his truck. Specifically, Corbitt testified the Deputy "never applied the brakes" and "steadily increase[d]" his speed from 25 miles per hour to 30 miles per hour through the intersection.

¶23. The expert also testified the Irwins' SUV was traveling 75 miles per hour at the time of the crash. When asked if Deputy Smith would have seen the Irwins' SUV had he stopped and looked, the expert stated, "[Y]es, sir, plainly visible."

¶24. He stated Deputy Smith did not exercise reasonable care in crossing Highway 6. In his ultimate opinion, the proximate cause of the accident was "Deputy Smith failing to stop and yield the right of way."

¶25. The expert retained by Panola County, Brady McMillen, had a different view of the facts. He also went to the scene of the accident and downloaded the data from the black boxes in both cars. He testified that data from the black box indicated the Irwin vehicle drove at a "constant speed of 75 mph." While McMillen agreed Deputy Smith failed to yield to oncoming traffic, he opined that "the excessive speed of the Irwin vehicle was a proximate cause of the accident."

¶26. Ultimately, the trial court, sitting as the finder of fact, determined Deputy Smith

"exercised at least some degree of care, even if he was negligent in failing to stop and/or perceive the Irwins' vehicle prior to entering the intersection." Based upon this factual finding, the trial court found the deputy was not acting in reckless disregard.

¶27. Aggrieved, the Irwin Estates appealed.

## DISCUSSION

**Substantial evidence supports the trial court's conclusion that the deputy did not act in reckless disregard.**

¶28. The Estates argue the trial court did not correctly apply the Mississippi Tort Claims Act (MTCA) as a matter of law. Specifically, the Estates contend the trial court should have found that Deputy Smith acted in reckless disregard.

¶29. "Immunity is a question of law." *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 994 (¶7) (Miss. 2003). "Questions concerning the application of the MTCA are reviewed de novo." *Id*.

¶30. "Cases brought under the MTCA are tried without a jury." *Id*. "The circuit court has the sole authority for determining the credibility of witnesses when it sits as the trier of fact." *Id*. "A circuit court judge sitting as the trier of fact is given the same deference with regard to his fact finding as a chancellor, and his findings are safe on appeal when they are supported by substantial, credible, and reliable evidence." *Id*.

¶31. "The MTCA shields the government from liability based on any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of

7

injury." *City of Jackson v. Graham*, 226 So. 3d 608, 611 (¶10) (Miss. Ct. App. 2017).

¶32. "Reckless disregard denotes more than mere negligence, but less than an intentional act." *Id*. "Further, reckless disregard is found when the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a *deliberate disregard* of that risk and the high probability of harm involved." *Id*. (emphasis added).

¶33. There is a key case explaining what constitutes reckless disregard in a case of this type. *Maldonado v. Kelly*, 768 So. 2d 906, 908 (¶2) (Miss. 2000). An officer approached the stop sign of an intersection. *Id*. He stated he stopped and looked both ways for oncoming traffic. *Id*. Seeing none, he drove through the intersection. *Id*. at (¶3). However, the officer's view was partially blocked by a water tower, and his car collided with another man's car. *Id*. But there was no evidence that the man was speeding at the time of the accident. *Id*. The man brought suit, and the trial court found the officer's conduct exhibited a reckless disregard for the man's safety and well-being. *Id*. at 909 (¶6).

¶34. Our Supreme Court reversed this finding and held that any mistake made by the law enforcement officer did not constitute reckless disregard. *Id*. at 911 (¶12). It stated terms such as "willful, wanton, and reckless" refer to "conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended." *Id*. at 910 (¶8). The Court also drew a distinction between wantonness and negligence. *Id*. "Wantonness is a failure or refusal to exercise *any* care, while negligence is a failure to exercise due care." *Id*. (emphasis added). Conduct that rises to the level of reckless disregard "evince[s] not only some

8

appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." *Id*. at 911 (¶11).

¶35.    In determining whether the officer's actions constituted reckless disregard, the Court considered that the officer was "aware of the nature of the intersection and took steps to avoid the collision." *Id*. at (¶12).  Specifically, he "exercised due care by stopping and looking both ways before driving through an intersection." *Id*.  While the officer may have been negligent, the Court ultimately ruled there was "no indication [he] acted with deliberate disregard to the consequences of attempting to cross the intersection." *Id*.  Therefore, the Court reversed the trial court's ruling. *Id*.

¶36.    The Supreme Court has also applied the rule to show what does constitute reckless disregard. *Maye v. Pearl River County*, 758 So. 2d 391, 395 (¶24) (Miss. 1999).  A deputy was leaving the parking lot of the Pearl River County jail. *Id*. at 392 (¶2).  "After checking all his rear view mirrors, he backed his car from the parking space straight up the incline to the entrance of the parking lot." *Id*. at (¶3).  "Even though the deputy checked his mirrors, he testified he could not see the road from the parking lot because the jail and the lot sit below the level of the road." *Id*.  "The deputy was attempting to back up the incline far enough into the entrance to make a left hand turn through the parking lot and then exit the parking lot through another entrance onto [a] road." *Id*.

¶37.    As the deputy was leaving, a woman was driving into the parking lot.  She saw the deputy backing toward her car and blew her horn. *Id*. at (¶4).  But he backed into her car nonetheless. *Id*.  The woman's car sustained damages to her front left fender and driver's

door. *Id*. at (¶8). She also hit the dashboard, injuring her right knee. *Id*. at (¶9). She sued the County. *Id*. at 393 (¶12). The trial court held the plaintiff failed to make the necessary showing that the deputy intended to hit the lady's car. *Id*. The woman appealed. *Id*.

¶38. On appeal, the Supreme Court began by clarifying there is no requirement to show intent to harm to remove an act from immunity. *Id*. The Court then explained reckless disregard is "just a step below specific intent." *Id*. at 394 (¶16). In determining whether the deputy acted with reckless disregard, the Court considered several facts. *Id*. at 395 (¶22). First, the deputy backed out of the parking lot knowing he could not see the cars behind him. *Id*. Next, although he checked his mirrors, the deputy knew this would not allow him to see oncoming cars. *Id*. Lastly, the Court stated that based on the damages to the woman's car, it was obvious the deputy drove "much too fast." *Id*. Ultimately, the Court found the deputy's actions rose "above simple negligence to the level of reckless disregard of the safety and well-being of others." *Id*.

¶39. Like the officer in *Maldonado*, Deputy Smith was aware of the nature of the intersection. When asked if he was familiar with the intersection, he responded, "Yes." Deputy Smith had driven through the intersection many times. The deputy also testified he took steps to avoid a collision. He repeatedly stated throughout the trial that he recalled stopping at the intersection and making sure the highway was clear before driving through the intersection.

¶40. The Estates cite *Maye* to support their contention that Deputy Smith acted with reckless disregard. But this case is distinguishable from *Maye*. Unlike the officer in *Maye*,

Deputy Smith never testified he was unable to see the highway. In fact, the deputy testified that "nothing obstructed [his vision] that day." Deputy Smith also testified he made sure the highway was clear before driving through the intersection. Lastly, there was no evidence Deputy Smith sped through the intersection. However, there was uncontested evidence the Irwin SUV was driving 10 miles per hour over the speed limit.

¶41. There was essentially one disputed fact at trial: whether Deputy Smith looked for traffic before crossing Highway 6. The Estates' expert testified the proximate cause of the accident was Deputy Smith's failure to yield, but Deputy Smith testified he looked for oncoming traffic before driving through the intersection. While Deputy Smith's testimony that he stopped at the stop bar directly conflicts with the black box data, this does not lead to the inescapable conclusion that *all* his testimony lacked credibility. Sitting as the finder of fact, the trial court found credible the deputy's testimony that he looked but did not see the Irwins before crossing. As a result, this case is closer to *Maldonado* than *Maye,* and the deputy's negligence does not rise to the level of reckless disregard.

¶42. It is well established that "[t]he circuit court has the sole authority for determining the credibility of witnesses when it sits as the trier of fact." *Durn*, 861 So. 2d at 994 (¶7). Furthermore, "[a]lthough reasonable minds might differ on the conclusion of whether or not the officer in question acted in reckless disregard, it is beyond this Court's power to disturb the findings of the trial judge if supported by substantial evidence." *City of Jackson v. Johnson*, 343 So. 3d 356, 378 (¶57) (Miss. 2022). Given this deferential standard of review and the conflicting evidence presented at trial, we cannot say that the trial court erred in

finding the failures by the deputy did not constitute reckless disregard.

## CONCLUSION

¶43.    Whether Deputy Smith acted with reckless disregard was a question of fact for the trial court to resolve at trial.  The trial court held Deputy Smith more likely than not looked in both directions before crossing the highway, but he simply failed to see the Irwins' SUV. Because this act of negligence does not rise to the level of reckless disregard required to compensate a claimant under the MTCA, we affirm the judgment of the trial court.

¶44.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**