ON MOTION FOR REHEARING

ON WRIT OF CERTIORARI

KITCHENS, Justice,
for the Court:
¶ 1. The motion for rehearing is granted. The original opinions are withdrawn, and these opinions are substituted therefor.
*692 ¶ 2. After observing LaMarcus Butler[1] turn off the lights of his vehicle’and make a u-turn in an apparent effort to avoid a police roadblock, Officer Gregory Jackson engaged the blue lights and siren of his patrol car and pursued Butler, at varying speeds, until Jackson’s superior officer instructed him by radio to desist. The fleeing Butler collided with a vehicle occupied by Margaret Stephens, Lee B. Lewis, and Oda Mae Green. Stephens died as a result of the crash, and Lewis and Green suffered severe injuries. Plaintiffs Lewis and Green, individually, and Sonya Stephens, on behalf of Margaret Stephens’s wrongful-death beneficiaries, filed suit in the Circuit Court of the First Judicial District of Hinds County against the City of Jackson, Mississippi. Following a bench trial in 2008, the trial court assessed 100 per cent of the fault to the City and entered judgment in favor of the Plaintiffs.[2] The Court of Appeals reversed and rendered the circuit court’s holding, finding that Officer Jackson had not acted in “reckless disregard for the safety and well being of persons not engaged in criminal conduct,” and therefore, governmental immunity shielded the City from liability. City of Jackson v. Lewis, 2013 WL 2803891, at *1, 153 So.3d 714, 715-16 (Miss.Ct.App.2013).
¶ 3. Aggrieved, the plaintiffs sought review by this Court, asserting that the Court of Appeals: (1) misinterpreted the factors for determining reckless disregard by law enforcement personnel applied by this Court in City of Ellisville v. Richardson, 913 So.2d 973 (Miss.2005); (2) improperly weighed the evidence on appeal, made credibility determinations, and improperly rejected evidence that supports or reasonably tends to support the findings of the trial court; and (3) improperly substituted its judgment for the trial court’s credibility determination regarding expert testimony. We find dispositive the question of whether the Court of Appeals misinterpreted and misapplied the Richardson factors for determining reckless disregard by law enforcement officers. M.R.A.P. 17(h). Finding that the Court of Appeals erred, we reverse its judgment. We reverse the judgment of the Circuit Court of the First Judicial District of Hinds County and remand the case for an apportionment of damages.
FACTS[3]
On August 21, 2001, at approximately 10:30 p.m.,[4] Officer Jackson was travel-, ing east on Monument Street in Jackson, Mississippi, en route to a roadblock set up at the intersection of Monument and Palmyra Streets. Officer Jackson observed a vehicle that was traveling east on Monument turn off its lights, make a u-turn, proceed west on Monument, and ultimately turn on Capers Avenue. Unbeknownst to Officer Jackson, Butler, the driver, had stolen the *693 vehicle. When Officer Jackson observed the vehicle make a right onto Capers, he turned on his blue lights and siren and followed the vehicle down Capers. According to Officer Jackson, Butler seemed to slow down about five to ten miles per hour for a moment on Capers, as if he were going to stop. However, Butler did not stop, turning instead onto Green Avenue and then onto Capitol and Longino Streets while being followed by Officer Jackson. The two cars continued west on Longino, which becomes Maple Street after Longino’s intersection with Fortification Street.
Officer Jackson testified that while on Maple Street, between the intersections of Fortifieation/Longino and Maple/Martin Luther King Jr. Drive, Butler “punched it.” Officer Jackson radioed Sergeant Jonathan Crawford, his supervisor, and informed him of his whereabouts and that he was pursuing Butler for violating a traffic ordinance. At that time, Sergeant Crawford told Officer Jackson to terminate the pursuit. Officer Jackson stated that he turned off his blue lights and siren and slowed down, but continued on Maple. Officer Jackson stated that the last time he saw Butler was when Butler’s taillights passed through the Maple/Martin Luther King intersection. He further testified that as he continued on Maple, he saw smoke and debris in the air and notified dispatch that there was possibly an accident. When Officer Jackson arrived at the intersection of Maple and Bailey Avenue, he notified dispatch that indeed an accident had occurred and that an ambulance was needed. Butler’s vehicle had collided with the Plaintiffs vehicle after Butler ran through the traffic light.
Lewis, 2013 WL 2803391, at *1, 153 So.3d at 715-16.
STANDARD OF REVIEW
¶ 4. “A circuit court judge sitting without a jury is afforded the same deference as a chancellor.” City of Jackson v. Sandifer, 107 So.3d 978, 983 (Miss.2013) (citing City of Jackson v. Powell, 917 So.2d 59, 68 (Miss.2005)). This Court leaves undisturbed a circuit court’s findings following a bench trial unless the findings “are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Sandifer, 107 So.3d at 983 (quoting Powell, 917 So.2d at 68). The circuit court’s findings “are safe on appeal where they are supported by substantial, credible, and reasonable evidence.” City of Jackson v. Law, 65 So.3d 821, 827 (Miss.2011) (quoting City of Ellisville v. Richardson, 913 So.2d 973, 977 (Miss.2005)). “Although reasonable minds might differ on the conclusion of whether or not the officer in question acted in reckless disregard, it is beyond this Court’s power to disturb the findings of the trial judge if supported by substantial evidence.” Richardson, 913 So.2d at 978 (citing City of Jackson v. Brister, 838 So.2d 274, 277-78 (Miss.2003)).
DISCUSSION
¶ 5. The Mississippi Tort Claims Act (MTCA) shields the government from liability based on “any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury....” Miss.Code Ann. § ll-46-9(l)(c) (Rev. 2012). “Reckless disregard,” according to this Court, denotes “more than mere negligence, but less than an intentional act.” Law, 65 So.3d at 826 (quoting Miss. Dep’t of Pub. Safety v. Durn, 861 So.2d 990, 994 (Miss.2003)). Further, this Court “find[s] *694 reckless disregard when the ‘conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.’ ” Durn, 861 So.2d at 995 (quoting Maldonado v. Kelly, 768 So.2d 906, 910-11 (Miss.2000)).
¶ 6. In Brister, 888 So.2d at 280, this Court held that the standard articulated by the United States Court of Appeals for the District of Columbia “is instructive” in determining “whether a police chase constitutes reckless disregard.” The following six factors were considered: “(1) length of chase; (2) type of neighborhood; (3) characteristics of the streets; (4) the presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; and (6) the seriousness of the offense for which the police are pursuing the vehicle.” Id. (citing District of Columbia v. Hawkins, 782 A.2d 298 (D.C.Ct.App.2001)). Justice McRae, concurring in result only in Johnson v. City of Cleveland, 846 So.2d 1031 (Miss.2003), included four additional factors: “(7) [wjhether the officer proceeded with sirens and blue lights; (8)[w]hether the officer had available alternatives which would [have] led to the apprehension of the suspect besides pursuit; (9)[t]he existence of police policy which prohibits pursuit under the circumstances; and (10)[t]he rate of speed of the officer in comparison to the posted speed limit.” Richardson, 913 So.2d at 977, 978 (citing Johnson, 846 So.2d at 1037 (McRae, P.J., concurring in result only)). In Richardson, this Court held that “it is appropriate for trial courts to consider all ten factors, and to look to the totality of the circumstances when analyzing whether someone acted in reckless disregard.” Richardson, 913 So.2d at 978.
¶7. At the time of Officer Jackson’s pursuit of Butler, the Jackson Police Department had in place policies regarding initiating and terminating pursuits, listed in General Order 600-20. With regard to the initiation of pursuits, General Order 600-20(2)(b) required that, “[bjefore initiating a pursuit the risks to society must be weighed against the benefits of apprehending the suspect.” General Order 600-20(2)(d) further provided that, “[ojfficers ■will initiate or continue a pursuit, of a law violator in a motor vehicle, only when the pursuit will be executed with caution so as not to create extreme or unreasonable danger for either the officer or the public.” (Emphasis added.)
¶8. General Order 600-20(5)(d)(l) provided:
Pursuits may be initiated when the officer knows that a felony has been committed and the officer has probable cause to believe that the individual committed the felony and the suspect’s escape is more dangerous to the community than the risks posed by the pursuit and the suspect clearly exhibits an intent to avoid arrest by using a vehicle to flee.
General Order 600-20(5)(d)(2) provided: The major factors for consideration of initiating a pursuit and/or the termination of a pursuit include the following:
a) safety of the public and officers,
b) seriousness of the offense/violation and the danger the suspect poses to the community if not immediately apprehended,
c) opportunity for delayed arrest of the violator,
d) traffic density and conditions,
e) weather and road conditions,
f) presence of passengers,
g) presence of pedestrians,
h) degree of control the suspect has over his vehicle,
i) speed and duration of the pursuit.
*695 General Order 600-20(5)(d)(3) provided that, “[o]ffieers and supervisors must be constantly reassessing the pursuit to determine if it should be terminated.” (Emphasis added.)
¶ 9. With regard to the termination of a pursuit, General Order 600-20(5)(e)(2) required termination “if the identification of the offender is known and is: a) not an immediate threat[,] b) not a violent felony suspect[,] c) a juvenile and poses no threat[,] d) a juvenile or adult and has committed only a misdemeanor offense.” (Emphasis in original.) General Order 600-20(5)(e)(3) continued: “A pursuit shall be terminated if the pursuit exposes the public or the officer to more danger than the violation or conditions justify.” Dennis Waller, who testified for the plaintiffs as an expert in the field of law enforcement, opined that Officer Jackson’s conduct constituted “a number of violations of that policy,” referring to General Order 600-20. The trial judge agreed, noting:
Mr. Waller opines that the pursuit in question should have never been commenced inasmuch as Officer Jackson never observed the commission of a felony nor had probable cause to believe that a felony had been committed. He further opines that the pursuit in question also should never have been commenced because Officer Jackson failed to weigh the basic interests of apprehending the suspect compared to the risks to society. According to Mr. Waller, it was these considerations which were analyzed by Sgt. Jonathan Crawford, Officer Jackson’s superior, which caused him to terminate the pursuit.
¶ 10. The findings of the trial court with regard to Waller’s testimony at trial are supported by the incident reports and trial testimony of Sergeant Chuck Lee of the Jackson Police Department Investigation Division, who investigated Officer Jackson’s pursuit of Butler. Sergeant Lee’s report stated that Officer Jackson’s conduct violated General Order 600-20(2)(b), (2)(d), and (5)(d). Lee wrote, “with the known facts as it relates to this pursuit, it is my belief and interpretation of the Jackson Police Department’s Pursuit Policy, that officer Jackson did not abide by this stated policy.” Lee’s supervisor, Lieutenant Greg King, agreed and wrote a memorandum concurring with Lee’s findings. At trial, Lee maintained that the pursuit policy had been violated. That said, Detective Ricky Purvis of the Jackson Police Department Internal Affairs Division wrote that he was not “able to find evidence to prove that Officer Jackson violated any of the department’s regulations as it relates to pursuits.”
¶ 11. The circuit judge found that “[t]he act of operating a vehicle [at night] without lights is a misdemeanor traffic violation,” and the Court of Appeals agreed: “[t]he factor examining the seriousness of the offense for which police are pursuing the suspect does not weigh in the City’s favor, as violating a traffic ordinance is hardly serious enough to trigger the initiation of a pursuit.” Lewis, 2013 WL 2303391, at *4, 153 So.3d at 718.[5] The Court of Appeals concluded that “Officer Jackson undoubt *696 edly violated JPD’s General Order by failing to weigh the seriousness of Butler’s offense against the risk of harm to the public. He was only aware of Butler committing a misdemeanor traffic violation at the time of the pursuit, not a felony.” Lewis, 2013 WL 2803391, at *3, 153 So.3d at 717.
¶ 12. We agree with the trial court and the Court of Appeals that the Jackson Police Department had in place, at the time of the pursuit of Butler by Officer Jackson, General Order 600-20, an official policy which prohibited continued pursuit under the circumstances. The Court of Appeals correctly noted that “the violation of a police policy is not dispositive of reckless disregard, but such violation is only one factor of ten to be considered.” Id. (citing City of Jackson v. Presley, 40 So.3d 520, 524 (Miss.2010)). We do not agree, however, that Officer Jackson’s initiation of pursuit violated General Order 600-20.[6] But continuing pursuit, realizing that the suspect was unlikely to stop, constituted a violation of his department’s established policy. This Court “anchored” its decision in Brister “on the fact that the officers involved in the chase were violating a departmental order that a pursuit may only be initiated when a suspect’s escape is more dangerous to the community than the risk posed by the pursuit. ” Dum, 861 So.2d at 995 (citing Brister, 838 So.2d at 280) (emphasis added).
¶ 13. As with the “existence of a police policy which prohibits pursuit,” the trial court and the Court of Appeals agreed with regard to some of the Richardson factors. The circuit judge found that the pursuit “occurred at night where visibility was not as clear.” Officer Jackson signaled to the suspect with his blue lights during the pursuit, as noted by the trial judge. While the circuit court did not address the characteristics of the street in its Opinion and Order, Waller drove the route in preparation for trial and testified to “some variances of the road” beyond Fortification going east on Maple, and that the road “jogs to the left after a stop sign.”
¶ 14. The issue of the length-of-pursuit factor, however, is less clear. According to the trial court’s Opinion and Order, “[t]he investigation revealed that from the start of the pursuit until the accident, the distance was approximately 1.8 miles” and “the length of the pursuit in a measure of time was less than (4) minutes.” The parties dispute and the lower courts do not-agree, however, whether Officer Jackson actually ended his pursuit at the time Sergeant Crawford, Officer Jackson’s immediate supervisor, instructed him to do so. The trial court concluded that “the pursuit continued even though the officer was ordered to terminate the pursuit.” The Court of Appeals disagreed that Officer Jackson had failed to terminate the pursuit: “he complied, turning off his blue lights and siren although he continued on Maple Street.” Lewis, 2013 WL 2303391, at *3, 153 So.3d at 718. The Court of Appeals continued, “[tjhere is also no indication in the record that Officer Jackson was speeding or that there was a danger of *697 harming someone,” and concluded “there was no deliberate disregard on Officer Jackson’s part.” Id. at *5, at 719.
¶ 15. Dennis Waller, accepted by the trial court as an expert in the field of law enforcement, stated that turning off the blue lights and siren is part of the termination procedure, but continued: “simply [to] turn your emergency equipment off and continue following the person at speeds greater than the speed limit or just continue following is not terminating because it doesn’t have the impact of affecting the perception of the driver you’re pursuing, and that’s who you are trying to get to slow down for the safety of the community.” Waller’s testimony that Officer Jackson failed to terminate the chase completely is consistent with this Court’s articulation of the applicable standard: “[t]he officer will either come to a complete stop in a safe location and await further instructions from the supervisor, or travel in the opposite direction of travel from the pursuit.” Law, 65 So.3d at 831 n. 11. Officer Jackson, as did the officer in Law, admitted at trial that he continued traveling in the direction of the pursuit. Id. He failed to take the sufficient steps required to communicate to the pursued suspect that the pursuit was at an end.
¶ 16. Also disputed was the speed at which Officer Jackson pursued Butler, the trial court found that “Officer Jackson pursued the vehicle driven by LaMarcus Butler for 1.8 miles at a speed well above the speed limit.” The Court of Appeals disputed the circuit court’s recitation of the facts, noting that “for approximately 1.2 miles of this distance, neither Butler nor Officer Jackson exceeded the posted speed limit.” Lewis, 2013 WL 2303391, at *3,153 So.3d at 717.
¶ 17. Officer Jackson testified that, throughout his pursuit of Butler, he maintained speeds within the posted speed limits. But, according to Officer Jackson, “[a]s soon as [Butler] got to the Maple Street Apartments,[7] the driver of the pursued vehicle “punched it.” He continued, “[a]nd I believe at that time Sergeant Crawford asked me what my rate of speed was I believe. I’m not sure. And, as I was telling him, I guess the vehicle — the last I saw of the vehicle it was just crossing over [Martin Luther King, Jr., Drive].” Officer Jackson’s report stated that he continued to follow Butler’s vehicle beyond Martin Luther King Jr. Drive at a speed of forty miles per hour. Jackson testified that Maple Street had a posted speed limit of thirty-five miles per hour. He estimated Butler’s speed to be greater than sixty miles per hour.
¶ 18. The trial testimony of Waller conflicts with Officer Jackson’s assertions that he maintained the speed limit, even in the last, fateful stretch of the pursuit (six-tenths of a mile). Waller testified that the fact that Officer Jackson “saw flying debris and smoke at the intersection of Maple Street and Bailey” suggests that his speed would have to have been close to sixty miles per hour. Waller continued, “I don’t think that he would have been able to see flying debris if he had stopped or slowed down significantly.” Officer Jackson reported and testified, both in his interviews and at trial, that he knew an accident had occurred because he saw smoke and debris emanating from the Maple/Bailey intersection.
¶ 19. The Court of Appeals wrote, ‘Waller’s testimony that Officer Jackson *698 pursued Butler for 1.8 miles at a speed well above the speed limit was simply a misunderstanding of the facts.” Lewis, 2013 WL 2303391, at *4, 153 So.3d at 718-19. But Waller never testified specifically that Officer Jackson and Butler had exceeded the speed limit during the entire pursuit. We agree that the trial court seemed erroneously to assume that the entire pursuit was high-speed, but this assumption was not based on anything that Waller had asserted. Waller agreed that the pursuit initially involved a relatively low speed; but when Butler and Officer Jackson reached Maple Street, both sped up to around sixty miles per hour. Waller testified that “60 miles per hour on Maple, it’s extremely reckless and probably homicidal.” Officer Jackson’s testimony that he saw flying debris provided an evidentia-ry foundation for Waller’s assertion that Officer Jackson was speeding closely behind Butler, and that Officer Jackson had not terminated pursuit of Butler at the time of the collision. It cannot be said that substantial evidence does not under-gird the findings of the trial court.
¶ 20. As to the type-of-neighborhood factor, the trial court concluded that “[t]he pursuit continued through a part of a residential area which bordered a library, convenience stores, at least two (2) apartment complexes, two (2) public parks and (2) schools.” The Court of Appeals agreed. But the parties and the lower courts dispute the presence of vehicular or pedestrian traffic on the night in question. Waller testified that law enforcement officers usually set up roadblocks in areas “where there would be some moderate amount of traffic” and that “there [were] obvious reasons why the sergeant terminated the pursuit. And I [Waller] can only surmise that one of those would be his knowledge of that area and the pedestrian and vehicular traffic at that time of day.”
The trial court articulated the same logic in its Opinion and Order, but the Court of Appeals disagreed. According to the Court of Appeals, “[t]here is nothing in the record that evidences the presence of pedestrian or vehicular traffic that night other than assumptions made by Plaintiffs’ expert, Dennis Waller....” Lewis, 2013 WL 2303391, at *3,153 So.3d at 718.
¶21. We find germane the knowledge of law enforcement authorities regarding, at a minimum, the potential for vehicular or pedestrian traffic in a particular area within their jurisdiction at a particular time of day. While it is true that no explicit fact testimony adduced at trial supports the assertion that traffic was heavy on the night in question, Sergeant Crawford testified that the presence of “stores, parks, schools, churches, houses, [and] residential areas” factors heavily into a decision whether or not to pursue. Crawford instructed Jackson to end pursuit: “I ordered it to be terminated due to the fact that I deemed it to be — would be possibly unsafe for the public.” (Emphasis added.) Further, Chuck Lee, a sergeant with the Jackson Police Department who investigated the incident, testified that the intersection where the collision occurred was a busy intersection. This testimony supports Waller’s expert opinion that Officer Jackson’s superior officer would not have terminated pursuit but for legitimate concerns regarding the potential for a high volume of traffic in the area.
¶ 22. The circuit judge did not mention in his Opinion and Order whether available alternatives to pursuit existed for Officer Jackson. But Jackson himself testified that, at one point during the pursuit, he was close enough to the suspect’s vehicle to see its license plate. He testified that, notwithstanding his ability to see it, he did not obtain the license plate information, nor did he convey that information to his *699 dispatcher by radio. This Court in Brister found that the City of Jackson acted with reckless disregard, in part because the pursuing officers “[easily] could have ... written down the tag number.” Brister, 838 So.2d at 280.
¶ 28. The Court of Appeals noted that “it is unlikely that there were any available alternatives that would have led to Butler’s apprehension, as Officer Jackson did not know Butler’s identity at the time of the pursuit, which would have helped him locate Butler later.” Lewis, 2013 WL 2303391, at *4, 153 So.3d at 718 (citing Law, 65 So.3d at 829-30 (“The Jackson Police Department’s Pursuit Policy specifically stated that a factor in favor of terminating a chase is whether the suspect’s identity is known and apprehension at a later time is feasible.”)). But Officer Jackson did not avail himself of a very ready means of potentially identifying the suspect, the tag number of the car he was driving.[8]

Totality of the Circumstances

¶ 24. The circuit court found that the totality of the circumstances preponderated in favor of the plaintiffs and that Officer Jackson’s conduct evinced reckless disregard for the public. The court concluded:
The investigation revealed that from the start of the pursuit until the accident, the distance was approximately 1.8 miles. Further, when Sgt. Crawford instructed Officer Jackson to stop the pursuit on Maple Street, Officer Jackson had pursued the vehicle for approximately 1.2 miles. The length of the pursuit in a measure of time was less than four (4) minutes. Officer Jackson testified that while pursuing Butler he ran at least three (3) traffic lights, and two (2) stop signs. The pursuit continued through part of a residential area which bordered a library, convenience stores, at least two (2) apartment complexes, two (2) public parks and two (2) schools. Moreover, the pursuit continued even though the officer was ordered to terminate the pursuit.
The Court of Appeals disagreed with the trial court’s reasoning, finding instead that “[t]he record does not show an unreasonable risk involved that night, despite the neighborhood consisting of parks, schools, and various other places where people are likely to gather.” ' Lewis, 2013 WL 2303391, at *5,153 So.3d at 719.
¶ 25. But this Court recently has held that evidence supported a finding of reckless disregard where the officer had pursued a suspect whom the officer knew to be a drug user and a prostitute. Law, 65 So.3d at 823. The suspect’s vehicle struck the one in which the Laws were traveling, causing injury to both of its occupants. Id. There, the pursuing officer’s supervisor had instructed him to terminate pursuit if the suspect started running red lights. Id. at 831. The officer continued the pursuit, “knowing he had no way to make [the suspect] stop.” Id. Further, even, though the officer did not chase the suspect to the *700 point of impact, “he did not follow protocol for terminating the pursuit.” Id.
¶ 26. Indeed, the Court noted a number of mitigating circumstances in Law: “[the officer] eventually lost sight of [the suspect], eventually realized the dangerousness of the situation, decreased his speed, and did not pursue [the suspect] directly to the crash site_” Id. at 832. In the present case, Officer Jackson pursued Butler through stop lights and, despite the relatively slow pace of the pursuit, knew or should have known that Butler was not going to stop and that he, the pursuing officer, had no way to effectuate a stop. Further, as discussed in greater detail above, Officer Jackson did not follow established protocol for terminating the pursuit by subjectively signaling to Butler that pursuit had ceased.
¶ 27. Richardson involved a similar situation. There, an officer pursued a suspect for whom police had outstanding warrants. Richardson, 913 So.2d at 975. As in Law, the pursued suspect’s vehicle collided with the vehicle of a third party, causing injuries. Id. The Court refused to reverse the trial court’s finding of reckless disregard where “there was ample evidence to support violations of the City of Ellisville’s Pursuit of Motor Vehicles policy.” Id. at 979. The Court continued, “[t]he chase was not the result of a serious crime being committed at the moment. The two vehicles were exceeding the speed limit in a residential neighborhood, in the dark, with a low probability of apprehending the suspect....” Id. Thus, the Court found ample evidence supporting the trial court’s finding of reckless disregard. Id. at 982.
¶ 28. Here, Officer Jackson observed Butler violating a traffic ordinance, which was a misdemeanor offense, by turning off his car’s headlights and making a U-turn, ostensibly to avoid a police roadblock. With knowledge that the offending driver was traveling at night with headlights turned off, Officer Jackson pursued the vehicle for approximately 1.2 miles at a relatively moderate speed. Despite the initial speed of both vehicles, Officer Jackson testified that he ran three red traffic lights and two stop signs in pursuit of Butler’s car, knowing that the headlights on Butler’s car were not illuminated. Officer Jackson testified that, at one point, he could have availed himself of an opportunity to relay the tag number of Butler’s vehicle to dispatch, but chose not to do so.
¶ 29. Further, Officer Jackson violated various mandates of his department’s General Order 600-20 and failed to perform the requisite balancing of the gravity of the offenses the driver had committed versus the danger posed to the public by pursuing a fleeing vehicle. Most egregious was Officer Jackson’s wanton defiance of the order of his superior to terminate pursuit and his failure to comply with the standard articulated by this Court for communicating termination to the pursued party.[9] Butler, for at least the final six-tenths of a mile of the chase, according to Officer Jackson, “punched it,” rapidly accelerating on a city street to what appeared to Officer Jackson to be about sixty miles per hour. According to Waller, be *701 cause Officer Jackson was in a position to see flying debris, he too was traveling at around sixty miles per hour and continued in pursuit of Butler at the time of the collision.
¶30. Based on the totality of the circumstances, Officer Jackson recklessly disregarded the safety of the public by pursuing Butler. We cannot say that the trial court’s finding was unsupported by substantial evidence.
¶ 31. Nevertheless, on rehearing, we reverse the judgment of the Circuit Court of the First Judicial District of Hinds County and remand the case for further proceedings. The court held that “the acts and/or omissions of The City of Jackson and Officer Gregory Jackson ... were the proximate contributing causes of the accident at issue and constituted one hundred percent (100%) of the injuries sustained by the Plaintiffs.” The City of Jackson raised the issue of apportionment in its Reply Brief before the Court of Appeals, but argued that “the trial court failed to apportion percentages of fault for each party alleged to be at fault.” We find that the court did, in fact, apportion percentages of fault. But substantial evidence does not support the court’s finding that Butler’s actions “w[ere] not a proximate contributing cause of the accident at issue and constitute^] zero percent (0%) of the injuries sustained by the Plaintiffs.” Butler prompted the pursuit, and his vehicle actually collided into the one occupied by Stephens, Lewis, and Green. We therefore reverse and remand for an apportionment of damages, which shall take into account this contributing cause.
CONCLUSION
¶ 32. Substantial evidence adduced at trial amply supports the trial court’s finding that the City of Jackson, through Officer Jackson, acted with reckless disregard for the safety of the public on August 21, 2001, resulting in the death of Stephens and injury to Lewis and Green. Therefore, the City of Jackson may not avail itself of governmental immunity under the Mississippi Tort Claims Act. We reverse the judgment of the Court of Appeals, and we reverse the judgment of the Circuit Court of the First Judicial District of Hinds County and remand the case for proceedings consistent with this opinion.
¶ 33. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS REVERSED AND THE CASE IS REMANDED FOR FURTHER PROCEEDINGS.
WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER AND KING, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE AND COLEMAN, JJ.

. Butler, whose death certificate appears in the record, died at age 19 on May 28, 2004, of two gunshot wounds to the back. Those wounds were not related to the present case.

. The circuit court assessed the following damages: $100,000 for Lewis, $100,000 for Green, and $500,000 for Stephens’s estate. Pursuant to the statute limiting governmental liability to a total of $500,000 for acts or omissions occurring on or after July 1, 2001, the circuit court reduced the award as follows: $71,428.57 for Lewis, $71,428.57 for Green, and $357,142.86 for Stephens’s estate. Miss.Code Ann. § 11-46-15 (Rev. 2012).

. Facts are taken verbatim from the opinion of the Court of Appeals.

. The accident report cites 21:41 as the time of the collision, which translates to 9:41 p.m. So Officer Jackson would have observed Butler’s vehicle and commenced pursuit some time before 9:41 p.m.

. See Miss.Code Ann. § 63-7-7 (Rev. 2013) (“It is a misdemeanor for any person to drive ... any vehicle ... which is in such unsafe condition as to endanger any person, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter.... ”); Miss.Code Ann. § 63-7-11 (Rev. 2013) ("Every vehicle upon a highway within this state during the period from sunset to sunrise and at any other tíme when there is not sufficient light to render clearly discernible shall be equipped with lighted front and rear lamps _") (emphasis added).

. The Court of Appeals’ determination that Officer Jackson’s initiation of pursuit violated General Order 600-20 is overly broad. The mere fact that Officer Jackson "blue-lighted” the suspect after observing him turn off the car’s headlights and make a u-turn cannot be construed as error on Officer Jackson’s part. The danger posed to the public by a person's driving a vehicle after dark without headlights illuminated, clearly a law violation, necessitates pursuit by police. See Miss.Code Ann. §§ 63-7-7, -11 (Rev. 2013). But here, when it became apparent that the suspect did not intend to stop, at that point Officer Jackson should have reassessed the propriety of continued pursuit as required by the police department’s applicable policy.

. According to Waller, this is the point at which Longino Street turns into Maple Street at Fortification Street.

. In fact, at the time of Officer Jackson's pursuit of Butler, the Jackson Police Department’s policy, General Order 600-20(5)(c)(l)(d), (e), and (f) required officers initiating a pursuit to notify the Communications dispatcher a “complete description of suspect vehicle,” the vehicle’s “license plate information,” and the "suspect vehicle occupant information, number, sex, and description...." While Officer Jackson testified that he remained in communication with dispatch, he acknowledged that he did not transmit the tag number. Relation of this information could have led Officer Jackson to a realization that the vehicle Butler was driving happened to have been stolen. Knowledge that a felony had been committed might have made pursuit reasonable under General Order 600-20. But Jackson pursued the fleeing vehicle in the absence of such knowledge.

. Our colleagues in the dissent would hold that Officer Jackson’s conduct did not rise to the level of culpability required under our precedent for a finding of "reckless disregard.” With respect, we disagree. We agree that reckless disregard requires wilful or wanton conduct, which this Court has defined as "knowingly and intentionally doing a thing or wrongful act,” as the dissent points out. City of Jackson v. Lipsey, 834 So.2d 687, 692 (Miss.2003) (citations omitted). But failure to terminate pursuit, in spite of clear instructions from a superior officer to do so, supports a finding of reckless disregard, and exemplifies the wanton or wilful conduct contemplated by this Court.