# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00269-COA

**MARY LUCKETT AND GARY LUCKETT**                                    **APPELLANTS**

**v.**

**LEAKE COUNTY, MISSISSIPPI AND**                                    **APPELLEES**
**CHIQUITIA M. COOKS (FORTUNE)**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/2023 |
| TRIAL JUDGE: | HON. CALEB ELIAS MAY |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GREGORY MALTA |
| | MITCHELL BLAKE HARTHCOCK |
| ATTORNEYS FOR APPELLEES: | DANIEL JUDSON GRIFFITH |
| | McKENZIE W. PRICE |
| | MARY McKAY GRIFFITH |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 02/03/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WEDDLE AND LASSITTER ST. PÉ, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.    Mary and Gary Luckett filed a complaint for negligence with the Leake County Circuit Court against Leake County and Chiquitia Cooks, a deputy with the Leake County Sheriff's Department.[1]  Under the Mississippi Tort Claims Act (MTCA), the Lucketts sought damages for injuries that Mary received in a vehicle collision with Deputy Cooks during the deputy's high-speed pursuit of a suspect.  After a bench trial, the circuit court apportioned

---

[1] Since the incident, Chiquitia Cooks married and is now called Chiquitia Fortune.  However, we will continue to refer to her as Deputy Cooks in accordance with the circuit court's record.

45% fault to Leake County and 55% fault to the fleeing suspect, Keislan Greer. The Lucketts filed a motion to reconsider, which the court denied.

¶2. Appealing the judgment, the Lucketts argue that because Deputy Cooks's "reckless disregard was the sole proximate cause of the collision and [Mary's] injuries," it was error for the circuit court to apportion any fault to Greer. We find no error and affirm the circuit court's judgment.

**Facts and Procedural History**

¶3. At approximately 7:00 a.m. on July 2, 2020, Deputy Cooks was alerted that local law enforcement was in pursuit of a suspect (Greer), who was driving recklessly at a high rate of speed (in excess of 100 miles per hour) toward Carthage, Mississippi. Deputy Cooks quickly spotted the suspect's car and joined the pursuit. She was the lead officer chasing Greer, with three Carthage police officers close behind her.

¶4. Prior to Deputy Cooks's pursuit, the suspect had been weaving in and out of traffic, nearly hitting oncoming traffic head-on. When Greer sped through the intersection of Highway 16 and Pine Hill Circle in Carthage, Deputy Cooks slowed her vehicle slightly and attempted to follow Greer through a red traffic light. Unfortunately, a vehicle driven by Mary Luckett also entered the intersection at that moment, with Mary apparently unaware of the lights and sirens of the approaching officers. Deputy Cooks's patrol car collided with the vehicle, causing Mary serious injuries.

¶5. The Lucketts filed a complaint for negligence against Leake County and Deputy

2

Cooks (the Defendants) on September 30, 2021. The complaint alleged that Deputy Cooks "was traveling at 114 miles per hour" when she applied her brakes only a second before the crash and that Mary had "sustained serious physical injuries in the collision" (e.g., broken ribs and a punctured lung).

¶6. The Defendants responded that the claim was controlled by the MTCA; thus, a claim against Deputy Cooks individually was "improper and subject to immediate dismissal." The Defendants also contended that the suspect, Greer, was the sole proximate cause of the Lucketts' injuries and/or damages.[2] On November 29, 2021, the Defendants filed a "Motion to Dismiss, or, Alternatively, for Discovery Protection," arguing that "all claims against Deputy Cooks individually and all claims based solely on negligence" against Leake County were not actionable under the MTCA.[3] On January 18, 2022, the court entered an agreed order to dismiss the claims against Deputy Cooks individually pursuant to Rule 41 of the Mississippi Rules of Civil Procedure; the claims against Leake County remained pending.

¶7. On May 4, 2022, the court entered an omnibus order stating that (1) the case is subject to the provisions of the MTCA; (2) a bench trial would be conducted pursuant to Mississippi Code Annotated section 11-46-13 (Rev. 2019); (3) damages claims were expressly limited by Mississippi Code Annotated section 11-46-15 (Rev. 2019); and (4) Leake County's

---

[2] Greer entered a guilty plea on May 4, 2021, to a charge of "Failure to Stop a Motor Vehicle."

[3] These claims included negligence per se; negligent selection, hiring, and retention; negligent training and supervision; and negligent entrustment.

participation in court-ordered discovery would not constitute a waiver of immunity. The court thereafter entered an agreed scheduling order for pre-trial discovery.

¶8. A bench trial was held on May 2, May 4, May 8, and May 12, 2023. Lay witnesses at trial were the Lucketts; Deputy Cooks; Assistant Chief Mike Williams of the Carthage Police Department; Coby Clay, former Chief of the Carthage Police Department; Annette Evans (Mary's sister); Inger Palmer; Officer Brad Horn; and Lieutenant Dekarian Wells. Proffered expert witnesses at trial were Dr. Lloyd Grafton, as the plaintiffs' expert in the field of police procedures; Wayne Winkler, as the plaintiffs' expert in the field of motor vehicle investigation and accident reconstruction; and Michael S. Street, whom the court accepted as an expert for the defense in the field of Mississippi law enforcement training, pursuit policy, and pursuit driving, with no objection by the plaintiffs. Winkler was also provisionally accepted by the court as an expert, with no objection by the defense. Our discussion will be limited to the trial testimony and evidence relevant to the issues on appeal.

¶9. Deputy Cooks testified that when she received the call from dispatch, her understanding was that the suspect had failed to stop for blue lights, which is "a felony flee." Deputy Cooks engaged her blue lights and proceeded toward Carthage. Immediately upon turning onto Highway 16, she saw police officers already in pursuit of Greer's car. She executed a U-turn and got behind Greer. Deputy Cooks admitted she had not received any training on the policy regarding motor-vehicle pursuits from the Leake County Sheriff's Department's training manual.

¶10. The pursuit policy of the Leake County Sheriff's Department in effect on the date of the accident was admitted as an exhibit. Relevant provisions of the policy state:

> High-speed vehicular pursuit of fleeing suspects can present danger to the general public, deputies, and suspects. Just as important is the possibility of unintended damage or injury to members of the public who are not involved in the pursuit. . . . A suspect willing to travel at high speeds and exhibiting erratic and violent behavior is a serious threat to the general public, with or without the presence of the deputy. . . . Vehicle pursuit conditions are tense, uncertain, and rapidly evolving situations. Under such conditions, deputies should continually assess the risk to themselves and the general public. Wise and prudent deputies terminate pursuits rather than unreasonably risk a threat to human life.
>
> 4. Deputies <u>are required to drive with due regard for the safety of the public</u>.
>
> . . . .
>
> 8. All involved deputies will continuously evaluate the circumstances and judge whether to continue or to terminate the pursuit.

Deputy Cooks said that she could see the intersection of Highway 16 and Pine Hill and noted that the traffic light was red. Although she remembered a vehicle (not Mary's) pulling out of a Walmart parking lot, Deputy Cooks averred that once that vehicle turned, "there was nobody at that red light." Deputy Cooks claimed that she slowed for the intersection, but she did not contest the assertion by the plaintiffs' attorney that she was "traveling at approximately 87 miles an hour" when she hit Mary's car. She also acknowledged that the posted speed limit was 35 mph. Deputy Cooks testified that upon approaching the intersection, she "scanned to make sure that it was safe to clear, to make sure there [were] no other vehicles there, no pedestrian, and just to make sure it was safe for me to clear the

5

light." When Deputy Cooks finally saw Mary's car pull into the intersection, she attempted to avoid her by merging into another lane.

¶11.  Mary testified that on the morning of the accident, she was waiting at the red light behind another vehicle. When the light turned green, she claims that she "looked left" and right before proceeding but saw "[n]othing." While she insisted that she neither saw nor heard the deputy's vehicle before she was hit, Mary did note that she was listening to a talk radio show and had her windows up.

¶12.  Inger Palmer testified that a car (driven by Greer) came around her "going very fast and almost hit . . . two to three vehicles head on"; so Palmer called law enforcement, worried that the person who passed her might kill someone.

¶13.  In his proffered testimony, Dr. Grafton opined that Deputy Cooks "violated" the department's pursuit policy "as she approached the red light," noting that the policy "says deputies are required to drive with due regard for the safety of the public." However, the defense's expert on the files of Mississippi law enforcement training and pursuit driving, Street, opined (1) that Deputy Cooks followed "the [department's] policy for her period of time that she was involved in the chase," and (2) that Deputy Cooks was qualified to participate in the pursuit. Street did acknowledge that Mississippi Code Annotated section 63-3-315[4] requires an officer to "slow down as necessary for safety" at a red light, but he also

---

[4] *See* Miss. Code Ann. § 63-3-315 (Rev. 2022) (stating that a "driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign *shall slow down as necessary for safety*" (emphasis

pointed out that Deputy Cooks had decelerated from 117 mph to 87 mph at the time of impact.

¶14. Winkler stated with regard to his findings that Deputy Cooks "was traveling in excess of 115 miles per hour" in the five seconds prior to the crash. When she crashed into Mary's vehicle, Deputy Cooks "was traveling approximately 84 miles per hour." Winkler determined that the light had turned green for Mary "for more than five seconds" prior to the collision. Winkler opined that Deputy Cooks's "actions were the sole cause" of the accident.

¶15. The circuit court entered its final judgment on November 15, 2023. Discussing the stipulated facts and trial evidence and applying the relevant factors in determining whether a pursuing officer demonstrates reckless disregard, the court noted the following:

> The pursuit in question lasted less than two minutes and covered a distance of less than two miles. This short timeframe limited Deputy Cooks'[s] ability to make a complete assessment of the circumstances and the effect those circumstances had on her decision to continue pursuing the suspect. . . . On the morning in question there was very light traffic due to the hour and because of the shutdown during the pandemic. . . . The weather was clear, and it was light outside with the sun rising. Visibility for Deputy Cooks was clear down the highway, through the intersection, and straight thereafter going out of town. . . . Prior to Deputy Cooks'[s] pursuit, the suspect had been weaving in and out of traffic, nearly hitting oncoming traffic head on and nearly running other traffic off of the road. The suspect maintained his high rate of speed and erratic driving even during the initial pursuit of the deputies from Edinburg. . . . Deputy Cooks used lights and sirens at all times during the pursuit. Due to the limited duration of the pursuit and the high speed required to maintain pursuit, there were no alternatives available for Deputy Cooks in apprehending the suspect other than high speed pursuit or unilaterally terminating the continuation of the pursuit. At the time of the pursuit, Leake

added)).

7

County Sheriff's Department policy did not prohibit Deputy Cooks from initiating pursuit under the circumstances. During her pursuit[,] Deputy Cooks'[s] speed decreased from 117 miles per hour at a distance of approximately 800 feet from the intersection to 90 mph as she approached the intersection and then to 87 mph at the point of collision with Mary Luckett's car. The speed limit was 35 miles per hour at the site of the collision.

As to the parties' competing experts in police procedures and pursuits, the circuit court noted that "[b]oth experts gave their own subjective opinion based on their own experience and training as to a what a reasonable officer should have or would have done under the circumstances and conditions presented to the experts for consideration." The court therefore did "not accept either expert's opinion as reliable or helpful in the findings of fact" because "[b]oth experts' opinions ignored a totality of the circumstances approach and seemed to rely totally on the subjective opinion of what that expert would do in the situation." The circuit court did, however, find the testimony of Winkler "helpful in understanding the physical data of the moments leading up to, during, and following the accident."

¶16. Considering the totality of the circumstances, the circuit court concluded that "Deputy Cooks acted in reckless disregard for the safety of others," but the court further found that "[b]ut for . . . Keislan Greer's[] dangerous driving, recklessness, and high-speed evasion of law enforcement for over thirteen miles, Deputy Cooks would not have pursued Greer, and the subject collision would not have occurred." Thus, the circuit court apportioned 55% of the fault for the accident to Greer, and 45% fault to Leake County. The circuit court did not allocate any fault to Mary.

¶17. On November 27, 2023, the Lucketts filed a motion for a new trial or for

8

reconsideration of the issue of apportionment of fault, alleging that the doctrines of collateral and judicial estoppel prevented the court from apportioning fault to Greer. The circuit court denied the motion on January 10, 2024, finding (1) that the Lucketts "failed to pursue and effectively abandoned the issues and arguments of collateral and judicial estoppel in their pre-trial motions and at trial," and alternatively, (2) that the doctrines of collateral and judicial estoppel were not applicable.

¶18. The Lucketts appealed the court's November 15, 2023 final judgment and January 10, 2024 order denying their motion for a new trial.

**Standard of Review**

¶19. This Court affords a circuit court sitting without a jury "the same deference with regard to factual findings" as we do a chancery court. *Holstein v. Nicholas*, 399 So. 3d 959, 963 (¶9) (Miss. Ct. App. 2025). "When reviewing the factual findings of the circuit court sitting as the sole trier of fact in a bench trial, we apply the substantial-evidence standard of review." *Id.* (quoting *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 23 (¶35) (Miss. Ct. App. 2012)). However, "errors of law, which include the proper application of the Mississippi Tort Claims Act," are reviewed de novo. *Univ. of Miss. Med. Ctr. v. Aycock*, 369 So. 3d 534, 538 (¶14) (Miss. 2023) (quoting *Maldonado v. Kelly*, 768 So. 2d 906, 908 (¶4) (Miss. 2000)). "As part of this de novo review, this Court may affirm the circuit court's judgment if the right result was reached, even if the circuit court reached the result for the wrong reason." *Holstein*, 399 So. 3d at 963 (¶9).

9

## Discussion[5]

### I.      Whether the circuit court erred in assigning fault to Greer.

¶20.    As discussed, the circuit court assigned 55% fault to Greer, finding that but for Greer's "dangerous driving, recklessness, and high-speed evasion of law enforcement," Deputy Cooks would not have engaged in pursuit of the suspect and collided with Mary's vehicle.

¶21.    The Lucketts argue that the court's apportioning fault to Greer was manifest error, as Deputy Cooks was the sole proximate cause of the collision with Mary.  The Lucketts particularly note that the cases relied on by the court in its decision are those in which the *fleeing suspect*, not the officer, had collided with the plaintiff(s).  *See, e.g.*, *City of Jackson v. Lewis*, 153 So. 3d 689, 701 (¶31) (Miss. 2014) (reversing trial court's decision not to apportion fault to fleeing suspect that hit plaintiff); *City of Jackson v. Law*, 65 So. 3d 821, 835 (¶56) (Miss. 2011) (finding no error in trial court's determination that fleeing suspect was 60% at fault for accident); *City of Jackson v. Brister*, 838 So. 2d 274, 276 (¶¶4-5) (Miss. 2003) (affirming trial court's apportioning 50% fault to the fleeing suspect and the City of Jackson); and *City of Jackson v. Thornton*, 94 So. 3d 1186 1196-97 (¶¶43-46) (Miss. Ct. App. 2011) (reversing trial court's decision to apportion the fleeing suspect only 20% fault since his actions were the proximate cause of the accident).  Here, because Greer never came

---

[5] Because Issues I through IV in the appellants' brief all address the same facts and relevant law, we have consolidated these arguments into two issues for the sake of conciseness and clarity.

in contact with Mary's car, the Lucketts contend that the court erred by apportioning any fault to him.

¶22. Mississippi Code Annotated section 85-5-7(5) provides in part, "In actions involving joint tortfeasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault without regard to whether the joint tortfeasor is immune from damages." Miss. Code Ann. § 85-5-7(5) (Rev. 2021). Section 85-5-7(1) defines "fault" as "an act or omission of a person which is a proximate cause of injury or death to another person or persons[.]" Miss. Code Ann. § 87-5-7(1). However, the statute further notes that "'fault' shall *not* include any tort which results from an act or omission committed with a specific wrongful intent." The Lucketts contend that "Greer's conduct does not meet the definition of 'fault' under [section] 85-5-7 because he evaded law enforcement with 'specific wrongful intent.'"

¶23. In *Turner v. City of Ruleville*, 735 So. 2d 226 (Miss. 1999), the supreme court defined "[r]eckless disregard of [the] rights of others" "[as] used in automobile guest law," as:

> the voluntary doing by motorist of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the *reckless taking of chance of accident happening without intent that any occur*. . . .

*Id*. at 229 (¶11) (quoting Black's Law Dictionary 1270 (6th ed. 1991)) (emphasis added). The *Turner* Court further recognized "that 'wanton' and 'reckless disregard' are just a step below specific intent." *Id*. at 230 (¶18) (citing *Evans v. Trader*, 614 So. 2d 955, 958 (Miss. 1993)).

¶24. While the evidence is undisputed that but for Greer's reckless driving, Deputy Cooks

would not have pursued Greer through the subject intersection, the facts do not support the Lucketts' argument that Greer had wrongful intent to cause Mary's injuries. Officer Wells testified that Greer's driving was "very reckless" and that it was foreseeable that his driving could "cause a bad wreck." Other witnesses' (Palmer and Deputy Cooks) testimony also indicated that Greer's driving indicated a reckless disregard for the safety of other motorists on the road. We further note that Greer later pled guilty to failure to stop a motor vehicle in violation of Mississippi Code Annotated section 97-9-72(2), which provides that any person who willfully fails to obey a law enforcement officer's signal to stop his vehicle and is guilty of doing so "by operating a motor vehicle in such a manner as to indicate a *reckless or willful disregard* for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felony[.]" Miss. Code Ann. § 97-9-72 (2) (emphasis added).

¶25.    The Mississippi Supreme Court has held that under section 85-5-7, even "absent tortfeasors who contributed to a plaintiff's injuries 'must be considered by the jury when apportioning fault.'" *Blailock ex rel. Blailock v. Hubbs*, 919 So. 2d 126, 131 (¶17) (Miss. 2005) (quoting *Smith v. Payne*, 839 So. 2d 482, 486 (Miss. 2002)). In *Lewis*, 153 So. 3d at 701 (¶31), the supreme court reversed a trial court's finding that a fleeing suspect's "actions 'were not a proximate contributing cause of the accident at issue and constituted zero percent (0%) of the injuries sustained by the Plaintiffs.'" The supreme court remanded the case for apportionment, taking "into account this contributing cause," as the suspect "**prompted the**

12

**pursuit**" and collided with the plaintiffs' vehicle. *Id*. (emphasis added). Although we acknowledge that in this case and the other cases cited by the circuit court, the fleeing suspect—not the pursuing officer—collided with the plaintiff(s), the cases nevertheless demonstrate that fault may be apportioned between the suspect and the municipality/officer, regardless of which party came in actual contact with the plaintiff(s).[6]

¶26.    In *Campbell v. State*, 285 So. 2d 891, 892-93 (Miss. 1973), the supreme court addressed whether a defendant's participation in street racing, which resulted in a fatal collision between two other vehicles, was sufficient to uphold his conviction for involuntary manslaughter. The *Campbell* court noted, "[I]t is clearly the law that when persons enter into an automobile race upon a public highway where human beings are likely to be using the highway and one of the participants kills or injures another person using the highway, automobile operators are liable criminally as well as civilly." *Id*. at 893.[7] This culpability

---

[6] We have found no factually comparable case from Mississippi involving a collision between law enforcement and a plaintiff during the pursuit of a suspect. However, in *Hildebrandt v. City of Fairbanks*, 863 P.2d 240, 241-42 (Alaska 1993), the Supreme Court of Alaska apportioned 60% fault to a fleeing suspect, 32% fault to the pursuing officer, and 8% fault to the plaintiff after the officer ran a red traffic light in pursuit of the suspect and collided with the plaintiff. *Cf. Fielder v. Stonack*, 661 A.2d 231, 236 (N.J. 1995) ("The critical factor in automobile cases is not which cars are involved in the collision, but whose negligence was the cause.").

[7] We also find the Iowa Supreme Court's discussion regarding causation in *State v. McFadden*, 320 N.W.2d 608 (Iowa 1982), persuasive authority for our findings. As in *Campbell*, the defendant in *McFadden* was drag racing with another person on a city street when the other driver lost control and collided with a third vehicle, killing a passenger. *Id*. at 609-10. Although McFadden's car did not physically contact the other vehicles, the trial court found the defendant guilty, noting that he had "recklessly engag[ed] in a drag race so as to proximately cause the . . . collision." *Id*. at 610. The *McFadden* court, while vacating

13

is consistent with the circuit court's reasoning in this case that "[b]ut for the suspect[] Keislan Greer's[] dangerous driving, recklessness, and high-speed evasion of law enforcement for over thirteen miles, Deputy Cooks would not have pursued Greer, and the subject collision would not have occurred." *Cf. Hoke v. W. L. Holcomb & Assocs. Inc.*, 186 So. 2d 474, 477 (Miss. 1966) (noting that "[n]egligence which merely furnishes the condition or occasion upon which injuries are received, *but does not put in motion the agency by or through which the injuries are inflicted*, is not the proximate cause thereof" (emphasis added)).  Here, Greer's actions (fleeing the police) clearly put in motion the agency by or through which Mary's injuries were inflicted—the police pursuit.

¶27.    Although our apportionment of fault to Greer might have been different, "questions of proximate cause and negligence are for the [trier of fact] to determine."  *Miller v. Vicksburg Masonic Temple*, 288 So. 3d 372, 376 (¶18) (Miss. Ct. App. 2019).  We cannot find the circuit court manifestly erred in determining that Greer's actions were a proximate contributing cause of the accident and in apportioning him 55% at fault for the collision.

II.    **Whether Deputy Cooks's "conscious disregard" was the sole proximate cause of the collision and Mary's injuries.**

¶28.    Based on our determination that the circuit court did not err in apportioning fault to Greer, we accordingly find no merit to the Lucketts' argument that Deputy Cooks was the

---

the sentence on other grounds, held that the "trial court did not err in applying ordinary proximate cause principles to determine whether the causation element of [the applicable involuntary manslaughter statute] had been met."  *Id*. at 613, 618.

14

sole proximate cause of the collision. However, we will briefly discuss the court's ruling as it pertains to the apportionment of fault to Leake County based on Deputy Cooks's actions.

¶29. Section 11-46-9(1)(c) of the MTCA provides immunity for actions relating to police protection under certain conditions, as follows:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . . .
>
> (c) [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless *the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury*[.]

Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2019) (emphasis added). The Mississippi Supreme Court has articulated ten factors to consider when assessing "reckless disregard in connection with a police pursuit":

> (1) length of the chase; (2) type of neighborhood; (3) characteristics of the streets; (4) presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; (6) seriousness of the offense for which the police are pursuing the suspect; (7) whether the officer proceeded with sirens and blue lights; (8) whether the officer had available alternatives which would lead to the apprehension of the suspect besides pursuit; (9) existence of a police policy which prohibits pursuit under the circumstances; and (10) rate of speed of the officer in comparison to the posted speed limit.

*City of Jackson v. Gray*, 72 So. 3d 491, 496-97 (¶17) (Miss. 2011) (citing *City of Ellisville v. Richardson*, 913 So. 2d 973, 977 (¶15) (Miss. 2005); *Brister*, 838 So. 2d at 280 (¶22)). "It is appropriate for trial courts to consider all ten factors, and to look at the totality of the

15

circumstances when analyzing whether someone acted in reckless disregard." *Gray*, 72 So. 3d at 497 (¶17) (quoting *Richardson*, 913 So. 2d at 978 (¶17)).

¶30.    We will address these enumerated factors discussed by the circuit court in its final judgment.

### i.    Length of Chase

¶31.    The court noted that the short time frame of the pursuit (less than two minutes and less than two miles) "limited Deputy Cooks'[s] ability to make a complete assessment of the circumstances and the effect of those circumstances had on her decision to continue pursuing the suspect." We find the court's reasoning is supported by the trial testimony.

### ii.    Type of Neighborhood

¶32.    As stated by the court, the neighborhood in the area of the pursuit was of "mixed use with residences, a school (not in session), a Wal-Mart, and other businesses."

### iii.    Characteristics of the Streets

¶33.    The court noted:

> The entire pursuit took place on Mississippi State Highway 16 going westbound through the city of Carthage. The highway has five lanes, two westbound, two eastbound, and one turning lane in between. The highway is straight through town and the intersection in question. There is a hill approximately 654 yards from the intersection. Traffic at the intersection in question is controlled by traffic lights for both the highway and the side street that crosses from a residential area to the parking lot of the Wal-Mart.

Deputy Cooks testified that the highway consisted of four lanes of traffic.

### iv.    Presence of Vehicular or Pedestrian Traffic

16

¶34. There was "very light traffic" and "no pedestrians," as the pursuit took place at approximately 7:00 a.m., and there was "a shutdown during the [COVID-19] pandemic." Deputy Cooks admitted that the pursuit was within the city limits of Carthage, which could be congested at times. She was also aware Walmart customers could have been going through the intersection. However, she noted, "There was little to no traffic at the time when this all started."

### v. Weather Conditions and Visibility

¶35. The circuit court noted, "The weather was clear, and it was light outside with the sun rising." Additionally, Deputy Cooks had clear visibility "down the highway, through the intersection, and straight thereafter going out of town." Deputy Cooks testified that she could "[d]efinitely" see the traffic light at Highway 16 and Pine Hill. She also said that she "had a good visual on [Greer]."

### vi. Seriousness of the Offense for which the Police are Pursuing Suspect

¶36. In its finding, the court noted that deputies had encountered Greer "driving recklessly at speeds over 100 miles per hour in a 55 mile an hour zone." Prior to Deputy Cooks's pursuit, Greer had also "been weaving in and out of traffic, nearly hitting oncoming traffic head on and nearly running other traffic off the road." His car did not have a license plate, and he could not be identified.

### vii. Whether the Officer Proceeded with Sirens and Blue Lights

17

¶37. The undisputed evidence was that Deputy Cooks used her lights and sirens at all times during the pursuit.

### viii. Whether the Officer had Available Alternatives for Apprehension Besides Pursuit

¶38. As noted by the court, there were no alternatives available for Deputy Cooks to apprehend the suspect except for high-speed pursuit or "unilaterally terminating the continuation of the pursuit." Again, we note that Greer could not be readily identified, as his vehicle did not have a license plate.

### ix. Existence of a Police Policy Prohibiting Pursuit under the Circumstances

¶39. The court found that the "Leake County's Sheriff's Department policy did not prohibit Deputy Cooks from initiating pursuit under the circumstances." Indeed, the department's policy permits a deputy "trained in pursuit" to "initiate a pursuit when the suspect exhibits the intention to avoid apprehension by refusing to stop when properly directed to do so." The policy further states, "Pursuit may also be justified if the deputy reasonably believes that the suspect, if allowed to flee, would present a danger to human life or cause serious injury." Under the circumstances here, with Greer's driving recklessly at a high rate of speed and endangering other motorists on the highway, we agree with the court that Deputy Cooks was not prohibited under the policy to pursue the suspect.

¶40. However, the policy also states that "[d]eputies are required to drive with due regard for the safety of the public" and are to conform to state law. As noted by the defendant's

18

expert (Street) and the trial court, section 63-3-315 states in part: "The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign *shall slow down as necessary for safety but may proceed cautiously past* such red or stop sign or signal." (Emphasis added). Deputy Cooks knew that the light was red. Yet, admittedly unaware of her speed during the pursuit, she continued through the intersection, slowing only to 87 mph in a 35-mph zone. We therefore agree with the court's reasoning that Deputy Cooks "did not even think about 'slowing down as necessary for safety'" and that her actions do not indicate she was following the county's "pursuit policy that emphasized discontinuing pursuit for the safety of the public."

x.     *Rate of Speed of the Officer in Comparison to the Posted Speed Limit*

¶41.    The posted speed limit was 35 mph at the collision site. As discussed by the court, Deputy Cooks decreased her speed "from 117 miles per hour at a distance of approximately 800 feet from the intersection to 90 mph as she approached the intersection and then to 87 mph at the point of collision[.]" However, Deputy Cooks testified that she was not aware of her speed, and she did not refute the data that her speed was 117 mph and above the posted speed limit.

¶42.    As the circuit court's findings pertaining to the relevant factors are supported by the evidence at trial, we find no error in the court's determination that Deputy Cooks acted with reckless disregard in her pursuit of Greer and its decision to apportion 45% fault to Leake County.

19

### III. Whether public policy considerations require that Leake County pay the full judgment of damages.

¶43. Finally, the Lucketts argue that public policy should require that Leake County pay the full judgment of damages, as "there is no Mississippi Supreme Court case . . . allowing apportionment in any similar case against the fleeing suspect without physical contact with the innocent person's vehicle."

¶44. Leake County asserts that this issue is procedurally barred, as it was not raised at trial. However, the supreme court has held that "[t]he rule that questions not raised in the trial court cannot be raised for the first time on appeal, is not without exceptions, among which are errors . . . affecting public policy." *Carter v. State*, 198 Miss. 523, 528, 21 So. 2d 404, 404 (1945) (quoting 4 C.J.S., *Appeal and Error* § 242).

¶45. Nevertheless, based on our discussion of the prior issues and our finding that the trial court did not err in its ruling and apportionment of fault, we reject the Lucketts' public policy argument that Leake County should be wholly responsible for Mary's injuries.

¶46. Accordingly, we affirm the circuit court's final judgment.[8]

¶47. **AFFIRMED.**

**CARLTON, P.J., WESTBROOKS, LAWRENCE, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., McCARTY AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

---

[8] Because the Lucketts have not asserted a specific argument with regard to the order denying their motion for reconsideration, we likewise affirm the circuit court's decision to deny the motion.